THE NATIONAL CASH REGISTER COMPANY (A CORPORATION) v. BERNARD BLUMENTHAL.

*Evidence—Testimony to vary writing—Trial—Defective machine—Exhibition to jury.*

1. An order by a merchant for the shipment to him of a cash register, to be paid for as stated in the order, which provided for the retention of title by the vendor until such payment was made, and which order was filled by the vendor, cannot be modified by evidence of a contemporaneous verbal agreement to the effect that the vendee should receive the machine on five days' trial, and, if not satisfactory to him at the end of that time, that he might return the machine.

2. In a suit to recover the price of a cash register the vendee claimed the right to rescind his order for its shipment because it failed to register correctly, and the agent who took the order was permitted to operate the register before the jury, and explain the principle upon which it worked. And it is held that the court committed no error in permitting the machine, in effect, to be received in evidence, and in allowing the witness to explain the principle upon which it worked, to show the manner in which it registered the cash received; there being testimony in the case tending to show that the register was in the same condition that it was in when returned by the defendant, and also its identity.[1]

Error to Ogemaw. (Simpson, J.) Argued February 26, 1891. Decided May 8, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Nelson Sharpe,* for appellant, contended:

1. The rule that parol testimony is inadmissible to change, alter, or vary the terms of a written contract does not apply to orders like the one given by the defendant. It was signed by him alone, and until accepted was not binding upon plaintiff;

---

[1] See *Kinney v. Folkerts,* 84 Mich. 616.

citing *Doty v. Martin*, 32 Mich. 462; *Manufacturing Co. v. Vroman*, 35 Id. 322; *Phelps v. Whitaker*, 37 Id. 72; *Richards v. Fuller*, Id. 161; *Weiden v. Woodruff*, 38 Id. 130; *Eberts v. Selover*, 44 Id. 521; *Machine Co. v. Gaertner*, 55 Id. 453; *Arbuckle v. Smith*, 74 Id. 568; *Aldine Press v. Estes*, 75 Id. 100; *Closs v. Thiefels*, 79 Id. 589; and counsel distinguishes *Nichols, Shepard & Co. v. Crandall*, 77 Id. 401, from the one at bar upon the facts in the cases.

2. There was no acceptance of the machine by the defendant. The article was one which must be used before its quality could be ascertained, and defendant had a right to test it before becoming liable for its value, and until so tested there was no acceptance; citing *Whiting Co. v. Lead Works*, 58 Mich. 36, 37; *Grieb v. Cole*, 60 Id. 400; *Farrington v. Smith*, 77 Id. 550.

3. The order reserved the title and ownership to the machine until paid for, and no property ever passed to the defendant under the contract. Until the cash was paid and drafts accepted as provided for in the order, the plaintiff was entitled to replevy the register; citing *Shipman v. Graves*, 41 Mich. 676; *Lentz v. Railway Co.*, 53 Id. 445, 446; *Cole v. Homer*, Id. 440, 441.

4. Had defendant failed in business while in possession of the register, plaintiff could have replevied it, or brought trover for its conversion in case defendant had sold it, and if so *assumpsit* will not lie for its price after its return; citing *Cole v. Homer*, 53 Mich. 440; *Mansfield Machine Works v. Lowell*, 62 Id. 552, 553; *Arbuckle v. Smith*, 74 Id. 568; *Sullivan v. Sullivan*, 76 Id. 101; *Hovey v. Gow*, 81 Id. 314.

*Markey & Hall*, for plaintiff, contended for the doctrine of the opinion.

CHAMPLIN, C. J.   Upon the 27th day of March, 1889, the defendant signed his name to the following agreement:

"WEST BRANCH, MICH., Mar. 27, 1889.
"To THE NATIONAL CASH REGISTER COMPANY,
                                        "Dayton, Ohio:
"Please ship to us, at our place of business, West Branch, Michigan, as soon as possible, one of your No. 2 registers, as per your illustrated catalogue. Said register to be equipped with all the latest improvements.

Cabinet to be nickel. Denominations of keys to be 1 c. to $10. Check key.

"On the fulfillment of the above we agree to pay to you one hundred and seventy-five dollars, viz.: $25.00 cash; bal. $25.00 a month till paid for. The register to be set on either counter, general store business. Five days after shipment, you to make drafts of full amount payable, viz., $25.00 payable at sight, and $25.00 payable monthly.

"Should the above get out of order any time within two years from date of shipment, you to quickly repair the same *gratis*, the undersigned paying express charges to and from the factory.

"It is agreed that the title of the said register shall not pass until the same is paid for in full, and shall remain your property until that time. This contract covers all agreements between the parties hereto.

"Yours truly,      B. BLUMENTHAL."

On the back of said order or agreement there is the following indorsement:

"See that all other particulars are put on this side. Draw through M. H. French & Co. Bank, of West Branch, Mich. Name on cylinder plate, B. Blumenthal. 3 backs and inside, pin-file, stamps, and all. Make it complete."

The testimony shows that afterwards, on or about the 12th day of April, 1889, the plaintiff shipped to the defendant the cash register mentioned in the contract, in accordance with its terms, and, at the end of five days after shipment, forwarded to the defendant the drafts therein provided for, for defendant's acceptance, and also a request for the payment of the $25 mentioned in the contract. The defendant refused to accept the drafts, and after five days reshipped the register to the plaintiff. He also wrote the following letter:

"WEST BRANCH, MICH., April 19, 1889.
"NATIONAL CASH REGISTER CO.,
"Dayton, Ohio:
"*Gents, Sir:* Please find by express your cash register.

We have given it a good, fair trial, and find its does not work correct; one day we find more, and one day less. We do not keep anything but cash accounts, and then it is not correct. Please do not send another one, as I will not accept it, for I have paid out $2.75 express for this one already. If your register worked as represented, we would be glad to keep it. And oblige,

"Yours respectfully,

"B. BLUMENTHAL."

Some correspondence took place between the parties, but no adjustment of their difficulties was arrived at; and plaintiff brought suit upon the contract for refusing to accept the drafts provided for in that instrument.

Upon the trial of the case the defendant offered to prove, under a plea of the general issue, that there was a contemporaneous verbal agreement to the effect that he was to have five days in which to try the machine, and, if it was not satisfactory to him, he might return it, and the trade would be off. The court refused to permit such testimony, on the ground that the contract appeared to be a full and complete one, and to embrace all the agreements between the parties thereto up to the time that it was signed, and became binding upon both parties as soon as the plaintiff performed its part of the agreement, although not signed by the plaintiff. But he further held that the defendant might show an agreement subsequent to the signing of the contract by him, and to the effect that he should have five days in which to try the machine after it arrived, and, if it was not satisfactory, that he could return it, and that would end the contract between the parties. Under this ruling of the court, defendant introduced testimony tending to show that there was such a subsequent parol agreement. This was denied by the agent of the plaintiff who sold the machine, and the question was submitted to the jury, under the instruction of the court to the effect that, if the jury

found that such a contract was made after the signing of
the agreement, then the plaintiff could not recover. The
jury found a verdict for the plaintiff.

The error, then, which we are to consider is whether
or not it was competent for the defendant to show that
contemporaneously with the signing of the written agree-
ment there was a verbal agreement to the effect that he
should receive the machine on trial, and should have five
days in which to try it, and, if not satisfactory to him
at the end of that time, that he might return the
machine. We think the court was correct in its con-
struction of this agreement. It contains all the material
stipulations of a contract, and, when accepted and acted
upon by the National Cash Register Company, was bind-
ing and conclusive upon both parties. The agreement
itself stated, over Mr. Blumenthal's own signature, that
"this contract covers all agreements between the parties
hereto." While this might not be conclusive, if it was
apparent upon the face of the contract that it was not
a full and complete instrument as between the parties,
yet under this contract we think that the admission
signed by the defendant is conclusive upon that point.

It is true that imperfect writings, and such as do not
appear to embrace the whole agreement between the parties,
may be supplemented by parol evidence, so long as the
portion not contained in the written part of the contract
does not conflict with that which is written, or add to
or vary its terms in a material part. The strongest case
upon this doctrine is that of *Chapin v. Dobson*, 78 N. Y.
74, but it seems to us that that case went beyond any
authority cited to support it, and did permit a verbal
agreement to be incorporated in it which varied the
terms of the written instrument. The contract itself
showed a complete agreement for the sale of certain
machinery on terms stated, and the terms of payment

were to be cash on delivery· yet the court permitted the contract to be varied by an agreement "that the machines should be so made that they would do the defendant's work satisfactorily, and, if not, the plaintiff would take them back, and the defendant should not be required to pay for them if the machines did not operate to the defendant's satisfaction;" thus turning what appears to be, upon the face of it, an absolute agreement for purchase and sale of the property therein described, into a conditional one.

The test for determining whether a writing is complete is laid down by Jones on the Construction of Commercial and Trade Contracts, at page 188, as follows:

"The test of the completeness of the writing proposed as a contract is the writing itself. If this bears evidence of careful preparation, of a deliberate regard for the many questions which would naturally arise out of the subject-matter of the contract, and if it is reasonable to conclude from it that the parties have therein expressed their final intentions in regard to the matters within the scope of the writing, then it will be deemed a complete and unalterable exposition of such intentions. If, on the other hand, the writing shows its informality on its face, there will be no· presumption that it contains all the terms of the contract."

Applying this test to the contract in this case, it appears to contain all the provisions necessary to make a formal and complete instrument; but the intention itself is stated in the instrument, which asserts that it covers all the agreements between the parties thereto. We think, therefore, that the judge was not in error in excluding evidence of a contemporaneous oral agreement of the nature stated.

One other question is presented· by this record deserving of notice, and that is this: During the progress of the trial the plaintiff brought into court what it claimed was the identical cash register manufactured for and sent to

the defendant, and requested the defendant to operate it in the presence of the jury, and explain to them wherein the mistakes were made. He declined to do so, as did also the two clerks who testified to the use of the instrument during the time the defendant had it in his possession. There was testimony introduced in the case which tended to show that this was the same cash register which had been forwarded to the defendant, and returned by him to the plaintiff. The plaintiff then called upon the witness stand Mr. Lewis, who sold the machine to the defendant, and requested him to take the machine, and explain its workings to the jury. This was objected to by the defendant's attorney for the reasons—

1. That it was incompetent, immaterial, and irrelevant.
2. Because the machine had not been identified.
3. Because it had not been shown that there was no change in the mechanism of the machine since it was shipped back.

There was testimony which tended to show that the machine was in the same condition that it was in when it was shipped back to the plaintiff, and also as to its identity. The plaintiff's attorney offered to show by the witness how the machine worked then, for the purpose of showing that it was correct when it was in the possession of the defendant. The court declined to permit it, but stated as follows:

"I shall permit you to show the principle upon which the machine that was sent to Mr. Blumenthal worked, to show whereby an error might be made by them, and not by the machine, for the purpose of showing how mistakes can be made by the parties who operate the machine,—operating a correct machine.

"*Plaintiff's Attorney:* We want him to operate the machine here, to show that this machine is perfect now; then, if we can not trace this machine to Mr. Blumenthal, our case would fail. We ask to show now that this machine

is a perfect machine in all respects, and to show the jury how it works.

"*The Court:* That you can do; you can show the principle upon which it works."

The witness thereupon stepped down to a table upon which the machine stood, and proceeded to work the machine, and explain its principles to the jury.

The defendant's attorney claims that this was error. In order to show whether or not it was error, it will be necessary to refer to the claim of the defendant made upon the trial that the machine furnished him did not register correctly; that sometimes it would overrun as much as $10 in one day, and sometimes fall short the same amount. We cannot see that there was any error committed by the court in permitting the machine, in effect, to be received in evidence, nor for the witness to explain the principle upon which it worked, to show the manner in which it registered the cash received. It was material testimony in the case, and is not like the cases cited by the counsel for the defendant. *Carstens v. Hanselman*, 61 Mich. 426, was a case where the plaintiff sued and recovered for medical services rendered to the defendant for the care and treatment of a fractured leg. In that case error was assigned because the court refused to allow the defendant to exhibit her injured limb to the jury. The injury occurred several years before, and there was testimony concerning the correctness of the treatment, which necessarily involved medical questions which no jury could be supposed to comprehend fully. We held that it is not competent to allow juries to determine for themselves whether a physician's course has been proper or improper in the treatment of a fractured limb, and the court very properly refused to permit them to inspect it for that purpose. It was further said by the Chief Justice in that case that—

"No inspection after an injury is healed, apart from some knowledge of the character of the injury and the method of treatment, could enable even a medical expert to decide upon the merits or demerits of the attending surgeon. A jury's guessing from such inspection would be of no value whatever, and any needless exposure would have been, as the could below properly held, improper, if not indecent."

In *People v. Hall*, 48 Mich. 482 (which was an information for murder), we fail to discover anything which applies to the question under consideration.

We discover no error in the record, and the judgment must be affirmed.

The other Justices concurred.