———o·o———

JACOB G. SUMMERS v. GEORGE N. WAGNER AND LEVI B. WAGNER.

*Sale—Passing of title—Evidence.*

Evidence of a parol agreement made after the execution of a written contract for the purchase of the cut of a shingle-mill, and for the passing of title when the shingles were reported and paid for, by which the vendor was to ship shingles not so reported and paid for, the title to which was to pass on their shipment, is admissible, and the vendor can recover for shingles shipped under such latter agreement, but not for shingles loaded in a car and destroyed by fire prior to their shipment.

Error to Montcalm. (Smith, J.) Argued June 5, 1891. Decided July 28, 1891.

*Assumpsit.* Defendants bring error. Judgment entered in Supreme Court for a portion of the claim for which plaintiff had judgment below. The facts are stated in the opinion.

*Drury & Wolcott*, for appellants, contended:

1. The written contract contained a specific provision as to when title to the shingles was to pass, and is the only evidence of the agreement of the parties on that point; citing *Adair v.*

*Adair,* 5 Mich. 204; *Cline v. Hubbard,* 31 Id. 237; *Skeels v. Starrett,* 57 Id. 350.

*George S. Steere,* for plaintiff.

MORSE, J. This cause was tried before Hon. V. H. Smith, judge of the Montcalm circuit court, without a jury, who rendered judgment for the plaintiff in the sum of $353.25.

The facts as found by the circuit judge are substantially as follows: February 5, 1889, the plaintiff and defendants entered into the following written contract:

"SHERIDAN, MICH., February 5, 1889.

"I hereby sell to G. N. Wagner & Bro., Grand Rapids, Mich., the cut of Pitcher's mill from February 1 to July 1, 1889, white pine shingles, to be 5 butts two and a quarter and 10 inches long; the XXXX to be strictly clear and free from all imperfections, and the 6-inch C. B. strictly clear butts. No other grades to be taken out. All to be free from stain, dote, and rot, and guaranteed to be good, merchantable shingles. Price, XXXX $2.75 per M., and $1.50 per M. for C. B. Shingles to be piled at railroad, and branded with G. N. Wagner & Bro.'s brand at mill as made, with brand furnished by G. N. Wagner & Bro. All shingles reported on the 1st and 15th of each month to be paid for not later than the 5th and 20th, and when paid for title to pass to G. N. Wagner & Bro., to be loaded on car free of expense to G. N. Wagner & Bro.

"J. G. SUMMERS. [Seal.]

"We agree to fill our part of the above contract.

"G. N. WAGNER & BRO."

Indorsed on the contract is the following:

"The within contract is hereby extended to Nov. 1, 1889, with same terms and conditions.

"G. N. WAGNER & BRO.

"J. G. SUMMERS."

On the 2d or 3d day of July, 1889, one of the defendants was at the mill, and the extension above was agreed to, and a few days later signed by the parties.

When the original contract was made, the mill was

some miles from Sheridan, to which village it was moved in May, 1889. While the mill was in its first position, the shingles were drawn to Sheridan, and piled opposite the depot, at a place called the "dock," situated about 20 rods from the mill after it was located at Sheridan. After the mill was moved, the shingles were not piled at the dock, but along the railroad track, and nearer the mill. When one of the defendants was at the mill in July, 1889, he saw these shingles. There were but a few in the mill. All the shingles then cut were counted and paid for. Plaintiff agreed to move the shingles then in the mill, and pile them with the others. This was done soon after the defendant was there. The defendant at this time said the shingles were piled all right, and at the right distance from the mill, and it was agreed they should remain there until ordered shipped, and that the shingles cut after that date should be piled along the railroad track near the others, and they were afterwards so piled. July 15, 1889, plaintiff reported the shingles cut and piled to that date, and was paid in full for them. After that date the plaintiff continued cutting shingles and piling them in this place, until the mill was destroyed by fire on the morning of July 27, 1889.

When one of the defendants was at the mill in July he directed that the shingles be shipped from those piled nearest to the mill. The defendants would send written orders to plaintiff for the shipment of the shingles, which would be loaded and shipped in compliance with such orders. On the 23d of July, 1889, plaintiff received the following order from defendants:

"GRAND RAPIDS, MICH., July 22, 1889.
"Order No. 543.
"To J. G. SUMMERS,
             "Sheridan, Mich.
"*Dear Sir:* Please load for New Haven, Ct., and con-

sign to F. W. Stone, New Haven, Ct., one car 10-inch XXXX pine. Hurry up the orders sent you some time ago, and be sure and brand every bundle. Order car at once, and load promptly. Be careful in loading to keep your tally correct. Send invoice promptly, and with it the number of this order. Fasten firmly both doors of car before it leaves your siding. Do not load any broken bunches of shingles.

"Respectfully, G. N. WAGNER & BRO."

When this order was received plaintiff loaded into a car, on July 25, 100,000. XXXX shingles, which had been cut after July 15, and had not been reported or paid for, but which had been piled where defendant Levi B. Wagner directed they should be piled; and he took them from the place where said defendant had told him to ship from on July 2 or 3, as orders came for the shingles, —that is, he was told to and did load the cars from the shingles nearest the mill. This car loaded with XXXX shingles left Sheridan before the mill burned, and on the 25th day of July, 1889.

Pursuant to another order received from defendants, the plaintiff had on the 26th day of July, 1889, partly loaded another car with shingles,—that is, he had placed in the car, July 26, 43,000 C. B.'s, and 5,000 XXXX's, and the car was standing on the side track the night of July 26, 1889. The shingles in this car had been taken from those nearest the mill, as before directed by defendant Levi B. Wagner, and from the place where it had been agreed they should be piled; but they were al¹ shingles that had been cut after July 15, and had not been reported or paid for when loaded.

On the morning of July 27, 1889, the mill burned, burning the car partly loaded, with the shingles therein, and also burning 32¼ thousand of C. B.'s, not loaded on car, and cut after July 15, and not reported or paid for, but piled where directed by defendants. At the time of

the fire there was piled about the mill 17¼ thousand XXXX and 36¾ thousand C. B. shingles, cut before July 2, and reported and paid for; and there was on hand in all of shingles cut after July 2, and reported and paid for, 80½ thousand XXXX and 32½ thousand C. B. shingles. These cut after July 2 above mentioned were burned.

It was the intent of the plaintiff and defendants that the car-load of XXXX shingles shipped July 25, 1889, should belong to and be the property of the defendants from the time they were loaded into the car for shipment, and it was also their intent that the shingles loaded into the car burned should belong to and be the property of the defendants as fast as loaded into the car, and the title to the shingles in both car-loads passed to the defendants before the fire.

From these facts the circuit judge found as a matter of law that the plaintiff was entitled to a judgment for the value of the shingles at the contract price, with interest at 6 per cent.

Some objections were made to the admission of testimony, upon the overruling of which errors are assigned; but we are satisfied that there were no errors committed in this respect. It was competent to show that plaintiff and defendants agreed, after the execution of the written agreement, that shingles nearest the mill, and not reported and paid for, might be shipped, and the title pass upon such shipment; and, when such agreement had been carried into effect, as in the case of the car-load shipped under direction of the defendants in their order of July 22, 1889, the plaintiff would be entitled to recover the contract price of the shingles so shipped. The plaintiff was clearly entitled to judgment for the value of this car-load.

As to the shingles loaded into the car which was not fully loaded, and which was burned, with its contents,

there is more difficulty in determining to whom the shingles belonged at the time of the fire. It is contended on the part of the defendants that there was no evidence whatever tending to show that it was the intent of the parties under any agreement, oral or written, that the title should pass to the shingles as soon as they were placed in the car, and before actual shipment. There was no direct evidence that the parties agreed that the title should pass as soon as shingles were put into the cars. It is true that the plaintiff testified, and the court so found, that one of the defendants directed the plaintiff to ship from the piles nearest to the mill; and under this direction it necessarily followed that shingles would be shipped that had not been reported or paid for. It would be fair, therefore, to infer that the intent of the parties was that, when defendants directed a car to be sent to third parties, and the plaintiff shipped them pursuant to such direction, thereby relinquishing his control over them, the title should pass out of the plaintiff upon such shipment. But there was no express agreement about it, and we do not think it a fair presumption that the parties intended that the title should leave the plaintiff as long as the shingles remained under his disposition and control. Until the car was loaded and shipped, the shingles were in the hands of the plaintiff, and the title remained in him. His express written agreement was that the title should not pass to defendants to the shingles until paid for, and the agreement to ship before they were paid for did not change the title until they actually passed beyond his control.

Judgment was entered in the court below for the shingles in both cars at the contract price, with interest at 6 per cent. There was error in including in this judgment the shingles in the burned car. Judgment will be entered in this Court for the plaintiff for the

shingles shipped in the first car, at the value of $275, with interest at 6 per cent. upon that sum from the date of shipment, July 25, 1889.

The defendants will recover costs of this Court.

The other Justices concurred.