| 133  673
| f151  7574

TOWN *v.* JEPSON.

1. SALE—DEFAULT OF BUYER—ABANDONMENT OF CONTRACT—RES-
CISSION.

Where a contract for the sale of fruit made payment a condi-
tion to the transfer of the property, the buyer's refusal to pay
for a third of the fruit as delivered, unaccompanied by any
explanation, warranted a finding that he had abandoned the
contract, justifying the seller in refusing to make further
deliveries.  *West* v. *Bechtel,* 125 Mich. 144, distinguished.

2. SAME—NONPAYMENT OF DRAFT.

Where, under a contract for the sale of fruit, a sight draft on
the buyer, with bill of lading attached, was to be sent to a
certain place in Michigan, and, before the receipt of the draft,
the buyer returned to his home in New York, instructing his
banker in Michigan to return any drafts to the makers, with
directions to forward them to a bank in New York, the seller,
after the return of his draft marked "No funds," with the
suggestion that it *might be paid* if sent to New York, was not
bound to hold the fruit, and send the draft to New York,
before he could treat the contract as abandoned.

3. SAME—AGENCY.

The banker to whom the draft in such case was sent was not
the agent of the seller, so as to charge the latter with the
banker's neglect to notify him of the arrangement made by
the buyer for the payment of the draft, but was the agent of
the buyer.

4. SAME.

But the banker through whom the draft was drawn *was* the
agent of the seller, rendering the latter chargeable with such
information as the banker received.

5. SAME—PLEADING—NOTICE OF DEFENSE.

In an action for the breach of a contract for the sale of fruit,
a notice attached to a plea of the general issue, setting up, in
substance, that plaintiff agreed to have funds in the bank at
a certain place to pay drafts for the fruit, which defendant
was to draw from time to time as shipments were made, and
that a draft for fruit shipped in accordance with the contract
was returned unpaid, whereupon defendant, having heard that
plaintiff had left the State, taking his funds with him, sold

133 Mich.—43.

the fruit to third parties,—is sufficient to apprise plaintiff that defendant will rely on the former's abandonment of the contract.

6. SALE—MODIFICATION OF CONTRACT—PAROL EVIDENCE.
    In an action for the breach of a contract for the sale of fruit, evidence that, after the execution of the contract, it was verbally agreed that defendant might ship in specified quantities, was admissible.

7. SAME—TERMS OF PAYMENT.
    Where a contract for the sale of fruit provided for payment on "sight draft, with bill of lading attached," evidence of an oral agreement that the draft should be sent to a certain place was not objectionable as varying the terms of the contract.

8. SAME—NONPAYMENT OF DRAFT—ABANDONMENT OF CONTRACT.
    The fact that a sight draft for the purchase price of fruit, sent to the place agreed upon, was returned unaccepted before the expiration of grace, did not prevent the seller from treating the contract as abandoned, particularly where the buyer had left the State with no intention of returning.

9. SAME—NOTICE OF RESCISSION.
    Where the conduct of a buyer of goods is such as to warrant the inference of an intention to abandon the contract, the seller is not bound to give notice of an election to rescind, in order to be relieved from further performance.

Error to Ionia; Davis, J.  Submitted May 13, 1903. (Docket No. 66.)  Decided June 30, 1903.

*Assumpsit* by Lewis S. Town against Merton K. Jepson and Edward Jepson, copartners as Jepson Bros., for the breach of a contract for the sale of fruit.  From a judgment for defendants, plaintiff brings error.  Affirmed.

The notice attached to defendants' plea, referred to in the opinion, is as follows:

"*To the Above-Named Plaintiff:*
    "You will please take notice that the above-named defendants will prove under the general issue above pleaded, and insist in their defense upon the trial of this cause, that, if they ever entered into the contract mentioned and set forth in the declaration of the said plaintiff, they were induced so to do by reason of the statements and

representations made at the time of entering into the same by the above-named plaintiff, and in consideration of such statements and representations; that, if such contract was entered into, said plaintiff, at and before the time of entering into the same, stated and represented to said defendants that he, said plaintiff, was engaged in business at Manchester, in said State of Michigan, and then had a place of business at that village, and would continue to have such place of business and to be present at said village during the whole of the coming apple season, to wit, the apple season of A. D. 1898; that he had a bank account with the bank at Manchester aforesaid, and would continue to have and keep a bank account at said bank during the whole of the said apple season, and that he would continually have in such bank a sufficient amount of money standing to his credit to pay any and all drafts made upon him from time to time by said defendants for apples shipped by said defendants under the terms and provisions of said contract; that in express reliance upon and in consideration of said statements and representations, and believing the same to be true, these defendants entered into said contract mentioned in said plaintiff's declaration, if they ever entered into same at all; that at the time of and after such agreement was executed and delivered, if the same was ever executed and delivered by said defendants to said plaintiff, it was agreed by and between said plaintiff and said defendants that, as fast as said defendants could manufacture and place in boxes for shipment 100 boxes of evaporated apples, such 100 boxes of apples were to be shipped to L. S. Town, in care of W. A. Banks Company, Cleveland, Ohio, and at the same time said defendants were to draw upon said plaintiff, with bill of lading attached to the draft, through the bank at Manchester, Michigan, for the amount of such shipment, and were to continue to make such shipments, and to draw in like manner for the amount thereof, until such contract had been satisfied, and that such draft so made should be paid at sight at said bank at Manchester, Michigan; that, in accordance with the terms of said agreement, on the 5th day of October, A. D. 1898, said defendants shipped 100 boxes of apples and made a draft therefor as agreed as above stated, and that on the 10th day of October, A. D. 1898, said draft was duly honored and paid by said plaintiff; that on the 22d day of October, A. D. 1898, said defendants again ship-

ped 100 boxes of apples in accordance with the terms of said agreement, and made draft in like manner upon said plaintiff, but that said draft was, after the lapse of several days, returned by the bank at Manchester, Michigan, to said defendants, dishonored and unpaid; that said defendants heard nothing further from said plaintiff until on or about the 12th day of November, A. D. 1898, when they received a registered letter purporting to have been written by said plaintiff and mailed at Rose, New York, requesting said defendants to ship the balance of the apples to said plaintiff at Cleveland, Ohio, and to make draft at sight to the Briggs National Bank, Clyde, New York; that in the meantime, after the dishonor of said draft, and hearing that said plaintiff had left the State of Michigan and taken his funds with him, these defendants sold and contracted their evaporated apples to other parties, and at the time of the receipt of such registered letter the apple season was so far advanced that it was impossible to procure apples in order to comply with said contract with said plaintiff, even if they had not been discharged therefrom; that said defendants will insist upon the trial of said cause that, by reason of the facts above set forth, said defendants were absolutely released and discharged from any liability upon said contract, if such contract was ever entered into, or for any damages by reason of the nonfulfillment of the same."

*A. F. & F. M. Freeman* and *V. H. & H. H. Smith*, for appellant.

*R. A. Hawley*, for appellees.

Carpenter, J. On the 28th of September, 1898, the parties to this suit entered into a written contract, reading as follows: .

" *Witnesseth*, that the said Jepson Bros. hereby agrees to deliver and sell, and does sell, unto the said L. S. Town, 7½ tons of good, prime, wood-evaporated apples, at 5 cents per pound, to be packed in 50-pound boxes, net weight; * * * same to be delivered on or before November 15, 1898, f. o. b. cars at Saranac; terms, sight draft, with bill of lading attached. And said L. S. Town agrees to buy aforementioned stock on terms and conditions as specified. And it is agreed that said Jepson

Bros. may furnish 5 tons more on same terms, if they make them. Weight guaranteed."

Defendants delivered on said contract only 100 fifty-pound boxes, or one-third of the amount contracted for, and, the market price of apples having advanced, this suit was brought to recover damages for the failure to deliver the remaining two-thirds. Defendants offered testimony tending to prove that, both before and after the execution of the contract, it was agreed that the draft referred to in said contract should be drawn on the plaintiff at Manchester, Mich., and that it would be honored at that place; that, after the execution of the contract, it was also orally agreed that defendants would ship 100 boxes at a time. October 5, 1898, defendants delivered 100 boxes, containing 5,000 pounds, and received their pay in the method agreed upon. October 22, 1898, defendants delivered to the railroad the second installment, consisting of 100 fifty-pound boxes, and drew upon plaintiff, with the bill of lading attached, at Manchester, Mich. This draft was returned without acceptance, with no information as to plaintiff's whereabouts, though very soon thereafter defendants learned from another customer of plaintiff's that he had gone to his home in the East. Regarding this as an abandonment of the contract, defendants sold their apples to a third person. They did not hear from plaintiff until they received a letter written by him and mailed at his home in New York November 9, 1898, directing them to ship the balance, and to draw on him for the amount through a bank at Clyde, N. Y. This defendants declined to do, on the ground that plaintiff's failure to honor the draft for the second shipment ended their obligations under the contract.

The court instructed the jury that, if the failure of the plaintiff to pay the draft indicated an intention to abandon the contract, their verdict should be for the defendants. They found for the defendants. Plaintiff insists that, in instructing the jury as above indicated, the trial court erred. He insists that under the decision of *West* v.

*Bechtel*, 125 Mich. 144 (84 N. W. 69, 51 L. R. A. 791), plaintiff's failure to pay for this installment of the fruit did not warrant defendants' rescinding the contract. We do not think that decision applicable to the facts of this case. There it was held that "the mere refusal to pay for a portion of the property delivered until more was received would not alone constitute such a breach of the contract as would warrant the other party, the defendant, in repudiating the entire contract." That case, however, approves the language of Chief Justice Coleridge in *Freeth* v. *Burr*, L. R. 9 C. P. 208:

"The true question is whether the acts and conduct of the party evince an intention no longer to be bound by the contract. Nonpayment on the one hand, or nondelivery on the other, may amount to such an act, or may be evidence for a jury of an intention wholly to abandon the contract, and set the other party free."

We think a refusal to pay for a third of the property described in this contract, which payment was to be made as a condition of the transfer of that property, unaccompanied by any explanation whatever, would, without doubt, afford evidence of an intention to no longer perform the contract. See, also, *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, cited in the opinion in *West* v. *Bechtel*.

Plaintiff insists, however, that the evidence in this case conclusively proves that there was not such a refusal. October 20, 1898, he returned to his home in Rose, N. Y., leaving funds in the bank at Manchester. He instructed the banker at Manchester, if drafts were drawn on him, to return them to the makers, and have them forward them on to the Briggs National Bank at Clyde, N. Y. Defendants drew their draft of October 22d through a banker at Saranac on the plaintiff at the bank in Manchester where plaintiff's funds were deposited. According to defendants' testimony, the draft and attached bill of lading were returned to the Saranac banker, with a letter from the Manchester banker, saying, "No funds," to-

gether with the information that possibly, if a draft was sent to Clyde, N. Y., it would be paid. While the defendants testify that their banker did not communicate to them the information received by him, we think the case should be disposed of upon the assumption that they are chargeable with that information. Assuming defendants so chargeable, we do not think this information imposed on them an obligation to hold their fruit, and send their draft to Clyde, N. Y., upon the chance that plaintiff might there pay it. The draft not having been honored as agreed, defendants were not bound to follow plaintiff to another State upon the possibility that he would there perform a contract which he had already broken.

Nor can we agree with plaintiff that because defendants sent their draft to the bank at Manchester, where plaintiff did his business, that banker became their agent in such a way as to make them chargeable for his neglect. It is a fair inference from the record that the draft was sent to that bank because it was known that that was where plaintiff kept his funds in Manchester. If defendants dealt with the Manchester banker as the agent of plaintiff, —and in a sense he was the plaintiff's agent,—they did not make him their agent. There was an obligation on the part of the plaintiff, under the agreement he had made with the defendants, either to accept the drafts at Manchester, or communicate to them any change he made in his arrangements for their payment. The person, therefore, whom he selected to transmit that communication, was his agent, and he was chargeable for his neglect.

Plaintiff also insists that the Saranac banker had transmitted a draft for another customer of his to Clyde, N. Y.,—a draft drawn on plaintiff at that place,—and that defendants, having used this same banker, were charged with this information. It is a sufficient answer to this argument to say that the testimony does not make it conclusively appear that the Saranac banker obtained this information before he ceased to act for defendants. According to his testimony, he might have returned defendants' draft before that information was obtained.

In our judgment, defendants are justified by this testimony in claiming that there was a refusal to pay for these 100 fifty-pound boxes of fruit without any explanation whatever; and, as heretofore indicated, this, in our judgment, warranted the jury in finding that plaintiff had evinced an intention to no longer perform the contract.

It is argued by plaintiff that the notice attached to defendants' plea of the general issue was not sufficient to justify their making the defense relied upon. Under the law as stated in this opinion, and the case of *Briesenmeister* v. *Knights of Pythias*, 81 Mich. 525 (45 N. W. 977), we are bound to hold the notice sufficient.

Plaintiff contends that the court erred in permitting defendants to prove that, after the contract was entered into, it was agreed that shipments of 100 fifty-pound boxes might be made by them. This testimony was clearly admissible. See *Summers* v. *Wagner*, 87 Mich. 272 (49 N. W. 570); *Freese* v. *Arnold*, 99 Mich. 13 (57 N. W. 1038).

Neither can we agree with plaintiff that parol testimony showing the agreement that the draft should be paid at Manchester was incompetent. This evidence did not tend to vary the contract. The contract contained these, and only these, terms: "Sight draft, with bill of lading attached." It was not only competent, but proper, for the parties to determine by an oral agreement upon whom these drafts should be drawn, and where they should be presented. *Liggett Spring & Axle Co.* v. *Michigan Buggy Co.*, 106 Mich. 445 (64 N. W. 466); *National Cash Register Co.* v. *Blumenthal*, 85 Mich. 464 (48 N. W. 622).

Nor is the point well taken that, because the acceptor of a sight draft has three days of grace, defendants were obliged to wait three days before treating plaintiff's failure to accept as an abandonment of the contract. While one who accepts a sight draft has three days in which to pay it, one to whom a draft is presented for acceptance has not three days in which to accept it. See *Case* v.

*Burt*, 15 Mich. 82. After plaintiff had returned from Manchester to his home in New York with the intention of remaining, defendants were not bound to keep the draft at the Manchester bank three days upon the chance that he might return there and accept it.

Defendants were not, as contended by plaintiff, under an obligation to give notice of their election to rescind the contract. They had a right, under the facts as claimed by them, to treat the contract as rescinded by the plaintiff.

We have carefully examined the other assignments of error relied upon. In our judgment, they are not well taken, and do not warrant discussion.

The judgment will be affirmed, with costs.

The other Justices concurred.