NATIONAL CASH REGISTER CO. *v.* DEHN.

1. SALES—ORDER—ACCEPTANCE—DELIVERY OF GOODS.

A written order for goods, though not formally accepted, becomes a binding contract on delivery and receipt of the goods described.

2. SAME — CONDITIONAL SALE — RIGHT TO SUE BEFORE TITLE PASSES.

Where cash registers were sold under a contract providing that they should remain the property of the seller until all the installments of the purchase price should be paid, and that, if the buyer should fail to make the first payment, or execute notes for the deferred payments as agreed, the entire price should become due, the seller was entitled, on refusal of the buyer to accept the machines, to recover the entire price, and was not restricted to an action for damages for breach of contract.[1]

Error to Bay; Shepard, J.   Submitted January 18, 1905. (Docket No. 71.)   Decided March 21, 1905.

Assumpsit by the National Cash Register Company against August E. Dehn and Carl O. Dehn, copartners as Dehn Bros., for goods sold and delivered. There was judgment for defendants, and plaintiff brings error. Reversed.

This is an action in assumpsit to recover the entire purchase price for two cash registers sold and delivered by plaintiff to defendants on August 10, 1903. The cash registers were purchased under the following order:

"CITY BAY, COUNTY BAY, STATE MICH.,
                                        "Date 8–10, 1903。
"NATIONAL CASH REGISTER CO.,
                        "Dayton, Ohio:
  "Please ship to us at our place of business, No. 101–103

---

[1] As to rights and liabilities of vendor and purchaser by conditional sale on default of payment, see note to *Cole* v. *Hines*, (Md.), 32 L. R. A. 455.

Midland street, West Bay City, as soon as possible, two of your No. 35¼ total-adding registers, case to be A-B 74704. Denominations of keys to be standard stne. In consideration of the above, we agree to pay you Four hundred and fifty dollars ($450.00), in U. S. gold coin or its equivalent, being price of register f. o. b. Dayton, Ohio, viz. $——— cash with order; $45.00 upon delivery; balance $30.00 per month. This register is to be used on the front and back counter grocery and meat business. Upon delivery of machine, you to send notes for signature for monthly payments as per above terms.

"No discount to be allowed on price of autographic or other registers the price of which is $30 or less, or on any amount allowed on registers taken in trade.

"On presentation, should there be any failure to pay such draft, or to execute notes for deferred payments, it is agreed that the full amount of the purchase price shall at once become due and payable. Should there be any default in the payment of any note, it is agreed that all the remaining notes shall at once become due and payable, anything in the notes to the contrary notwithstanding. In default of any payment, you or your agent may take possession of and remove said cash register without legal process; and, in such case, all payments theretofore made by me under this order shall be deemed and considered as having been made for the use of said register during the time the same remained in my possession, and shall be retained and kept by said register company as such payment. In the event of refusal to accept said cash register when tendered, it is agreed that the sum first above mentioned, less any previous actual cash payments, shall at once become due and payable as liquidated damages and not as penalty.

"Should the register get out of order from ordinary use, any time within two years from date of shipment, you to quickly repair the same, gratis, the undersigned paying transportation charges to and from your factory or nearest agency capable of making the necessary repairs, or if repairs are desired made where the register is located, the undersigned to pay the traveling expense of repairman from and back to your factory or nearest agency capable of making the necessary repairs.

"It is agreed that the title to the said cash register shall not pass until the purchase price or any judgment for the same is paid in full, and shall remain your proper-

ty until that time.    It is expressly agreed that this order shall not be countermanded.

"This contract covers all agreements between the parties hereto.    Nameplates to read Dehn Bros.    A on back, B on front;    private till;    draw through People's Savings Bank of West Bay City;    ship by freight.

"Yours truly,

[Sign here]    "DEHN BROS.

"By C. O. DEHN."

In compliance with this order, which was sent in to plaintiff's home office at Dayton, Ohio, the machines were shipped to defendants from Dayton by freight, as provided in the order.    When the rigisters arrived in Bay City, the railroad company notified defendants to that effect, and they sent down and got them, and brought them over to their store from the freight office.    Defendants did not countermand or cancel the order, or assume to do so in any way, prior to the actual receipt of the registers at their store.    After uncovering the registers and examining them, defendants objected to receiving them on the ground that the registers were not the kind which they had ordered, they insisting that they had selected and supposed they had ordered initial key machines, which would enable them to keep track of the particular clerk who registered particular payments, and that plaintiff's agent undertook and agreed to describe such machines in the order, and they gave evidence tending to substantiate this claim. On the other hand, the plaintiff gave evidence tending to show that the two registers delivered were the exact machines selected and intended to be described in the order. The defendants claim that they were induced by plaintiff's agent to retain the machines for the purpose of trying them to see if they would not be satisfied to retain them; that they never accepted the machines, but, on the contrary, refused to accept them; and, after using them for some six or seven weeks, at the request of plaintiff's agent, they took the registers to the Michigan Central depot, and shipped them to the National Cash Register Company at Dayton, Ohio.    This suit was begun October

12, 1903, while the cash registers were still in the possession of the defendants, prior to their shipping them to Dayton. When the registers arrived in Dayton the cash register company refused to receive them, and directed its attorneys to notify the debtors or their attorneys that the machines were subject to their order, and at their risk of loss, damage, etc. The trial judge, however, refused to permit plaintiff to introduce proof of this fact.

Plaintiff's declaration, after setting forth the contract, alleges, among other things:

"That said defendant refused and failed to pay the draft for $45, provided for in said order and contract, on presentation of the same, and did fail and refuse to execute notes for deferred payments, as in said contract provided, and still refuses so to do, and that by reason thereof the full amount of said contract, to wit, the sum of $450, thereby and under the terms of said contract became due and payable, and the same is now due and payable to said plaintiff."

*Pierce & Kinnane,* for appellant.

*Lee E. Joslyn,* for appellees.

BLAIR, J. (*after stating the facts*). The principal question in this case arises upon assignments of error challenging the correctness of the court's instructions to the jury that the order signed by the defendants never became a binding contract, because not accepted by the plaintiff in writing, and that plaintiff could not recover unless they should find that the defendants had accepted the registers. We do not consider it necessary to discuss the authorities cited with much learning by counsel in this case relative to the legal status of the order prior to performance on the part of plaintiff, since the order clearly became a binding contract between the parties when the cash registers were actually delivered to and received by the defendants, provided they were the kind of machines selected and which the order properly described. *National Cash Register Co.* v. *Blumenthal,* 85 Mich.

464; *Hallwood Cash Register Co.* v. *Millard,* 127 Mich. 316. This proposition is not disputed.

Counsel for defendants says in his brief:

" Plaintiff's third contention, that the delivery of the registers in question by plaintiff to defendant is a sufficient acceptance by plaintiff, is conceded to be the law, and there can be no doubt of that proposition as far as it goes; but we contend that this is not the question—the real question—at issue. * * * It was not disputed in the court below, it will not be disputed here, but that the plaintiff made out such a case in the lower court as might have warranted a verdict for breach of contract in refusing to accept the registers; but that is not the claim in the declaration, nor was that feature of the case in any way before the court, the action being for the entire purchase price of the registers sold, there being no count for breach of contract."

In *National Cash Register Co.* v. *Blumenthal,* supra, this court said, speaking of a similar order:

" It contains all the material stipulations of a contract, and when accepted and acted upon by the National Cash Register Company was binding and conclusive upon both parties."

Whether title passed or not is of no consequence in determining plaintiff's right to sue for the entire amount to be paid. It was provided in the contract itself that title should not pass until the machines were paid for, and the title would not have vested in the defendants if they had accepted the machines under the contract. The right of the plaintiff to sue for the entire amount does not depend upon the vesting of title in defendants, but upon the promises of defendants contained in the contract. Defendants agreed to pay, upon the delivery of the machines, $45, and the balance of the purchase price to be paid $30 a month, for which notes were to be given. They further agreed that, should they fail to so pay or execute the notes, "that the full amount of the purchase price shall at once become due and payable." The plaintiff delivered the machines, and, if they were the ones ordered, it at once became the duty of defendants to pay and give the notes

as they had agreed. They refused to pay or to give the notes, and thereupon the entire purchase price became due and demandable. The plaintiff has properly declared upon this clause of the contract providing that the full amount of the purchase price shall become due and payable upon default, and it is entitled to recover, provided it has furnished the machines which were ordered.

In 2 Mechem on Sales, appears the following :

" Sec. 1415. By Contract Payment May be Due Before Title Passes. There is, moreover, no reason why the parties may not stipulate that payment shall be made even before the title passes. As is said in a recent case : ' If a man is willing to contract that he shall be liable for the whole value of a chattel before the title passes, there is nothing to prevent his doing so, and thereby binding himself to pay the whole sum.' "

As authority for this doctrine, the author cites *White* v. *Solomon*, 164 Mass. 516 (30 L. R. A. 537). In this case the opinion was written by Justice Holmes, now of the Supreme Court of the United States. The action was based upon the following contract :

" *Gentlemen:* Please deliver according to shipping directions given below, one White's Physiological Manikin, Medical Edition, price $35. In consideration of its delivery for me, freight prepaid, at the express office specified below, I promise to pay the sum of $35, as follows : $10 upon delivery at the express office, and the balance in monthly payments of $5.00, each payable on the first of each and every month thereafter until the whole amount is paid, for which the publishers are authorized to draw when due. It is expressly hereby agreed that in case of the failure to pay any one of the said installments after maturity thereof, all of said installments remaining unpaid shall immediately become due and payable, and the said Jas. T. White & Co. may take or cause to be taken the said manikin from the possession of the said——or their representatives, to whom he may have delivered the same, without recourse against said Jas. T. White & Co. for any money paid on account thereof. It being expressly agreed that the money paid on account shall be for the use and wear of said manikin."

Justice Holmes, speaking for the court, said:

"The main question is whether the judge who tried the case ought to have ruled that 'the plaintiffs are not entitled to recover the price of the article in question, but must offer evidence to the court upon the question of damages for the alleged breach of said contract.' A majority of the court are of opinion that this ruling properly was refused. We assume in favor of the defendant, but without deciding, that the title to the manikin did not pass by delivery at the express office, but that assumption does not dispose of the case. In an ordinary contract of sale the payment and the transfer of the goods are to be concurrent acts, and if the buyer refuses to accept the goods, even wrongfully, he cannot be sued for the price, because the event on which he undertook to pay the price has not happened; and although the fact that it has not happened is due to his own wrong, still he has not promised to pay the price in the present situation, but must be sued for his breach of contract in preventing the event on which the price would be due from coming to pass. The damages for such a breach necessarily would be diminished by the fact that the vendor still had the title to the goods. But in the case at bar the buyer has said in terms that, although the title does not pass by the delivery to the express company, if it does not, delivery shall be the whole consideration for an immediate debt ( partly solvendum in futuro) of the whole value of the manikin, and that the passing of the title shall come as a future advantage to him when he has paid the whole. The words 'in consideration of its delivery' are not accidental or insignificant. The contract is carefully drawn, so far as to make clear that the vendors intend to reserve unusual advantages and to impose unusual burdens. We are not to construe equities into the contract, but to carry it out as the parties were content to make it. If a man is willing to contract that he shall be liable for the whole value of a chattel before the title passes, there is nothing to prevent his doing so, and thereby binding himself to pay the whole sum."

In *Marvin Safe Co.* v. *Emanuel* (New York Court of Common Pleas), reported in 21 Abb. N. C. 181, the memorandum of order was as follows:

"320 Broadway, N. Y., Dec. 15, 1886.
"Marvin Safe Co.: Please send as per mark given

below one No. 206 safe, for which the undersigned agrees to pay the sum of $127.50-100, payable $10. cash and $10. per month till paid for, dollars.

"Terms cash, delivered on board in New York, unless otherwise stated in writing.

"It is agreed that Marvin Safe Co. shall not relinquish its title to said safe, but shall remain the sole owners thereof until above sum is fully paid in money; and if notes are given, until all such notes are actually paid in cash.

"In event of failure to pay any of said installments or notes when same shall become due, then all of said installments or notes remaining unpaid shall immediately become due, and Marvin Safe Co. may, at their option, remove said safe without legal process.

"It is expressly understood that there are no conditions whatever not stated in this memorandum, and the undersigned agrees to accept and pay for safe in accordance therewith.

"Sign here.                    EMANUEL & TAYLOR.
"Salesman.                     R. F.
"Approved.
"Money must not be paid to salesmen for our account.
"Mark on door, Emanuel & Taylor.
"Route, 320 Broadway, 3d floor.
"Not accountable for damage after shipment."

Daly, J., speaking for the court, said:

"The defendants in their written agreement expressly agreed to pay $127.50 for the safe which they ordered to be sent to them, and, as the safe was sent, and defendants refused to receive and pay for it, I cannot see any objection to the recovery of the price. The fact that it was also stipulated in the same written agreement that the title to the safe should not pass until the whole price was paid cannot affect plaintiff's right to recover upon the express agreement to pay, because the latter is an independent stipulation. The fact that the price was to be paid in installments, $10 down and $10 per month, does not affect the right of recovery. The same written agreement provides that all the installments shall become due upon default in paying one; and the option given thereupon to the plaintiff to remove the safe does not cancel the obligation to pay them when they so become due. It hardly seems necessary to cite authorities in support of the claim made by the plaintiff. The agreement to pay is enforceable in the

same way that a promissory note would be if the promise to pay for the safe had been contained in such an instrument instead of in this contract. It would be no defense to the note to say that the vendors and vendees had expressly stipulated that the title to the safe should not pass until the same was paid. Parties have the right to make any agreement they please, so long as they do nothing in violation of the law. They might have agreed that the possession as well as the title of the safe should be in plaintiff until the price was paid, and, if there was an express agreement to pay the price, it would be recoverable, because that would be the contract."

In support of his contention, defendants' counsel cites several Michigan cases, in which the contract was entirely verbal, where the court held that an acceptance must be shown of a part of the goods to bind the defendant, delivery alone not being sufficient, on the principle that the vendor cannot, by his own act alone, take the case out of the statute. Counsel also cites *McCormick Harvesting Machine Co.* v. *Cusack*, 116 Mich. 647, contending that that case rules the case at bar. Counsel says: "An examination of the order in this case shows that it is much like the McCormick order in several ways." We think the orders are strikingly dissimilar in most respects. In particular the clause, "On presentation, should there be any failure to pay such draft or to execute notes for deferred payments, it is agreed that the full amount of the purchase price shall at once become due and payable," is not found in the *Cusack Case*. In the latter case, also, the proofs showed conclusively that there never had been any delivery to the defendant prior to the countermanding of the order, and the order only required settlement by notes on delivery. Moreover, the order in the *Cusack Case* was never sent in to the principal, but was retained by the agent, and there were no acts of performance on the part of the principal sufficient to constitute an acceptance of the order on its part. In the case at bar there was a complete delivery by the plaintiff and a voluntary taking of possession by defendants for inspection. The defend-

ants made a written proposal containing all of the terms of a mutually binding contract, and when this proposal was accepted by full performance on the part of plaintiff the contract became a complete written contract.   Delivery in compliance with a written order constitutes an acceptance of the order, and a mutually binding contract results. Delivery under an oral order does not constitute an acceptance, because there is nothing to accept, the oral order being void, and only acceptance by the defendants can raise contract relations.   The language of Mr. Justice. MOORE in the *Cusack Case* must be limited to the facts of that case, where, in the opinion of the learned justice, "there was no acceptance of this order," and therefore the contract was unilateral and void, as much as though it had been an oral contract; it was merely an unaccepted proposal. In such case undoubtedly it would be essential to show an acceptance of part of the goods by the defendant.

We think that the only question which should have been submitted to the jury was whether the machines delivered were of the same description as the ones actually ordered, and the jury should have been instructed to find a verdict for the plaintiff in case they found that the cash registers delivered were the same kind of registers as those ordered.

We also think that the court erred in refusing to permit plaintiff's counsel to cross-examine the defendants as to their previous testimony, and in excluding the plaintiff's letter, Exhibit B.

For the errors indicated, the judgment is reversed, and a new trial granted.

MCALVAY, GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.