MOUAT *v.* BAMLET.

1. CONTRACTS—PATENTS—ROYALTIES.

 A patentee granted to another a license to manufacture and control the sale of a patented heater. Both were to sell the heaters, and the licensee agreed to pay a certain royalty on all sales. Subsequently it was agreed that the royalty on each sale thereafter should be five dollars, instead of the sums stated in the original contract, and that the patentee should also be entitled to a certain percentage off the list price on all heaters he bought. *Held*, that, since the licensee had the right to regulate prices, the patentee could not avail himself of the benefit of the new contract by taking the royalties thereunder, and also insist on the right to buy at the old prices.

2. SAME — SUBSTITUTED PAROL AGREEMENT — SETTLEMENT — ESTOPPEL.

 Where the parties had acted under a parol agreement which had been substituted for one in writing, and had made settlements thereunder, they were estopped from claiming under the old contract; and it was therefore error, in an action thereon, to exclude evidence of the parol agreement, and of the settlements made under it.

Error to Wayne; Frazer, J. Submitted February 6, 1900. Decided March 13, 1900.

*Assumpsit* by John D. Mouat against Frank H. Bamlet to recover an amount claimed to be due upon a contract for the manufacture and sale of a patented heater. From a judgment for plaintiff, defendant brings error. Reversed.

*Thomas Hislop*, for appellant.

*Wisner & Harvey*, for appellee.

HOOKER, J. Mouat was the holder of letters patent for a hot-water heater, and on the 2d day of October, 1890, made a contract with Bamlet whereby he granted to Bam-

let a license to manufacture and sell heaters under said patent, and to manage and control their manufacture and sale.    Both were to sell heaters, and article 5 of the contract provided that Bamlet should pay to Mouat $25 for each heater shipped to fill orders procured by him or his agent, and $15 for each heater shipped to fill orders from other sources, and these sums were to constitute said Mouat's royalty in full.    On May 1, 1894, a new agreement was made as a substitute for article 5, as follows:

"That the royalty on all Mouat heaters sold after May 1st, 1894, shall be five dollars on each size numbered from 1 to 11, instead of fifteen and twenty-five dollars, as stated in original contract.    It is further agreed that the price of said heaters shall be 45 per cent. off list, as per latest catalogue to the trade.    It is still further agreed that the discount to said Mouat is to be 50 per cent. off list on all heaters purchased by him, and that he is to receive the difference between 45 and 50 per cent. on all sales made to Detroit plumbers and steam-fitters.    It is mutually agreed that this contract shall substitute article 5 of original contract, and be in full force from and after May 1st, 1894."

This action is brought to recover a balance alleged to be due upon these contracts, and also an item for plumbing, which last is unimportant here.    The defendant has appealed.

Upon the trial it was claimed by the plaintiff's counsel that the substituted contract of May 1, 1894, was based on catalogue 3, which was then in use, and it was claimed that he had a right to purchase all heaters upon the basis of that catalogue.    It appeared that after that date Bamlet made a new catalogue, in which the numbers of the heaters were so changed that the price of each size was increased to the former price of the next higher number. The plaintiff insisted that this was a breach of his contract, and that he had still the right to purchase them at the former price list.    The defendant sought to show that in 1895 the parties made an oral agreement that thereafter their dealings should not be governed by the substituted

contract of May 1, 1894, and that instead the plaintiff should receive 50 and 10 per cent. on purchases, and that he should not receive the 5 per cent. ( *i. e.*, the difference between 45 and 50 per cent.) on goods sold to the trade, and that from that time the parties settled upon that basis; but this testimony was excluded upon the ground that the written contract could not be affected by such parol agreement. Counsel then made the claim that, if the plaintiff was entitled to recover the 5 per cent., the defendant should be entitled to have applied the additional 10 per cent. which he claimed had been paid under the alleged oral agreement.

The court instructed the jury that:

"The controversy arising under this contract: *First*, what is meant by numbers from 1 to 11, and what rights these parties have under these catalogues as mentioned. There are two catalogues offered in evidence here in this case,— one of them that antedates this article of agreement of May 1, 1894, and, I understand, one that was issued subsequently to this agreement; and in the catalogue issued subsequently to this agreement the numbers of these boilers were changed. This article was evidently intended to confine this royalty, under the terms of this article, to heaters from numbers 1 to 11, but in the new catalogue that was issued there were new numbers. The numbers were changed. Number 1 was made number 2, and so on. You have heard the testimony. The same identical heaters were sold; at least, all the heaters from 1 to 11 were sold; but the numbers were changed, and the prices under the first catalogue were changed. I charge you that it is a fair construction and a legal construction of this contract to say that Mr. Bamlet had a right to change the prices of these heaters as he saw fit, that he had the control of any price issued in any previous catalogue, and that he had a right to raise or lower the price of these heaters as he saw fit. It was his business to fix and arrange the price at which these heaters were to be sold; but he had no right to change the catalogue in regard to the numbers of these heaters, so as, by designating them by a different number, to prevent Mr. Mouat from receiving his royalty upon the heater. This would

not be right, and it is not a construction of this contract that he would be entitled to have. So that, if you find that No. 1 in the original catalogue was No. 2 in the second, he would be entitled to have No. 2 in the second catalogue for the same terms as he would on No. 1,— that is, Mr. Mouat would,—and so as to every number mentioned in the original contract. But the other parts of the contract would apply as to the price, on the percentage that was to be allowed to Mr. Mouat, or the difference between certain per cents. would be figured according to the terms of the original contract; the price being fixed by the new catalogue, if you shall find that that was the catalogue issued to the trade, and from which these heaters were sold. You have heard all the testimony. There has been some effort made to show that a different arrangement was entered into between these parties subsequently to the date of this contract, by parol,—that was not in writing. I charge you that no such contract would be binding, and I have excluded all evidence concerning it, for reason that it is in contravention or violation of the statute of frauds, and could not be entered into between these parties lawfully, its performance continuing for more than a year; and for the reason mentioned, and for various reasons, I charge you that it is not for your consideration. But in figuring up the amount, whatever it may be, if you find anything due Mr. Mouat, it is in relation to this written contract, as I have interpreted it, which is before you in the evidence in this case."

It will be observed that the court construed the contract as giving the defendant the right to change the prices upon the heaters, if he chose to do so, but he held that he could not change the numbers so as to affect the plaintiff's royalty. It goes without saying (and we do not discover that any claim was made to the contrary) that the royalties earned prior to the change of the catalogue could not be affected by the change in the catalogue; but on May 1, 1894, royalties were limited to five dollars per heater, regardless of the number, in addition to which plaintiff was to have 5 per cent. of the catalogue price on all heaters sold to the trade, and 50 per cent. on all purchased by him. It was thenceforth immaterial to him what

numbers defendant put upon the heaters, so far as royalty is concerned; and the court held that the defendant had a right to change the price, and, if so, plaintiff could not complain.   Yet he was complaining, because the advance in price made the heaters cost him more money than as though sold to him at the old catalogue prices; and the court told the jury that, if No. 1 was raised to No. 2, the plaintiff would be entitled to have No. 2 in the second catalogue for the price of No. 1, and so as to every other number.   The court added that the plaintiff was to have the 5 per cent. on the increased price on sales to the trade, and he refused to allow the defendant to recover back the extra 10 per cent. discount over and above the discount fixed by the writing upon plaintiff's purchases.   We are of the opinion that the court was right in saying that the contract gave the defendant the right to regulate prices, as that did not affect the plaintiff's royalty.   The second writing placed the royalties upon another basis, and his contention that he had the right to avail himself of the advantages of that writing by taking the royalties, and insist on his right to purchase at old prices, is not tenable.

Again, if the parties did make a new oral arrangement, and settle under it, the plaintiff is now estopped from claiming the right to collect royalties under the second written contract, upon sales so settled for; and, if he were not, he should not be allowed to collect them, and refuse to account for increased discounts, paid upon the agreement that such royalties, or a part of them, were to be discontinued.   The proof upon this subject should have been admitted.

It follows that the judgment should be reversed, and a new trial ordered.

The other Justices concurred.