## JACOB *v.* CUMMINGS.

1. CONTRACTS—FRAUDS, STATUTE OF—MODIFICATION OF WRITTEN
CONTRACT.

   A contract in writing may be modified after its execution by
parol agreement and strict performance thereunder
waived or abrogated by the parties.

2. SAME—MODIFICATION OF WRITTEN CONTRACT—CONSIDERATION.

   That the parties to a written contract considered it to their
advantage to depart from a strict performance thereof
would constitute a sufficient consideration for the modifi-
cation.

3. EVIDENCE—PAROL TESTIMONY—MODIFICATION OF WRITTEN CON-
·TRACT.

   Evidence of a parol agreement to waive rights or remedies
provided in a written contract is admissible, not being in
violation of the rule against the admission of evidence to
alter, vary, or contradict a written agreement.

4. CONTRACTS—ACTS OF PARTIES—INTENT.

   A departure from stipulated performance of a written con-
tract may be predicated upon acts as well as upon an ex-
press agreement to that effect.

5. SAME—STRICT PERFORMANCE OF CONTRACT—WAIVER.

   Where plaintiff, knowing that defendant had not abandoned
his intention of exercising his rights in an option for the
purchase of certain leasehold property, four days before
the expiration of said option, co-operated with defendant
in making an unsuccessful attempt to renew it, he must
be held to have waived his right to insist on the strict
performance of an agreement by defendant to notify
plaintiff 15 days before the expiration of the option if he
did not intend to organize a corporation to take over said
property and give to plaintiff $25,000 worth of the stock,
or, in case of sale of the premises, to pay him $25,000 in
cash.

6. SAME — BREACH OF CONTRACT — DAMAGES — EVIDENCE — SUFFI-
CIENCY.

   Where no sale of the premises was made entitling plaintiff

to the $25,000, and no evidence was introduced as to what stock of said corporation would have been worth had it been formed and plaintiff received same, the court below properly held, that, having failed to show any damages, plaintiff was not entitled to any.

7. Appeal and Error—Equity Case Disposed of on Record Presented.

Plaintiff, in filing a bill for an accounting and for a personal decree, having selected the equity side of the court, and having brought the case to this court on appeal to be heard *de novo* on the record made in the court below, is not entitled to a rehearing to supply proof of damages which he failed to introduce on the hearing, and final decree will be entered in this court on the record here presented.

Appeal from Wayne; Codd (George P.), J. Submitted January 18, 1921. (Docket No. 22.) Decided March 30, 1921.

Bill by Ben. B. Jacob against George H. Cummings for an accounting on the terms of certain option contracts, and for a personal decree for breach thereof. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Wilkinson & Hinkley*, for plaintiff.

*Paul Oren* (*Harrison Geer*, of counsel), for defendant.

Wiest, J. The plaintiff, a real estate broker, having learned that Peter Smith & Sons, a corporation, was considering the sale of the leasehold interest and building owned by it at the corner of Griswold and State streets in Detroit, and being advised by Mr. Talbot, secretary of the company, that the same might be purchased for $325,000, provided some representative man was interested, and being told that it would not

be sold to him as he would want it for speculative purposes, went to Alfred M. Low and requested him to obtain an option on the premises. Mr. Low, not wishing to invest any money in purchasing the option, consented to accept an option in his name if plaintiff would procure the money necessary to secure it, and agreed he would assign the option to a suitable person upon receiving compensation for his services. The plaintiff heard that defendant was looking at the property with a view of purchasing and went to see him to find if he would be interested in paying Mr. Low the consideration necessary to obtain the option, and take an assignment thereof. After conferences, defendant gave plaintiff a check for $5,000, payable to Mr. Low, for the purpose of securing the option. The plaintiff delivered the check to Mr. Low, and upon consultation with Mr. Talbot it was agreed that an option should be given Mr. Low, and the check was indorsed by Mr. Low and a 90-day option given him on March 9, 1916, and by him assigned to defendant, and thereupon defendant signed the following agreement:

"Mr. BEN B. JACOB,
      "Detroit, Michigan.
"*Dear Sir:* Whereas, you have this day secured for me an assignment of a certain option to purchase the leasehold and building known as the Peter Smith & Sons building, located at the southwest corner of Griswold and State streets, in the city of Detroit, Michigan, which assignment is made direct from Alfred M. Low to me, but which was obtained and secured by you from the said Alfred M. Low, the assignment running direct from him to me, I herewith agree to pay you as a further consideration for said assignment and for your services, the sum of twenty-five thousand ($25,000.00) dollars unless (*a*) I shall sell said building for a sum in excess of four hundred thousand ($400,000.00) dollars before the time of the expiration of said option, in which event I shall pay you not only said twenty-five thousand ($25,000.00) dollars, but also twenty-five per cent. (25%) of the excess

over and above four hundred thousand ($400,-000.00) dollars for which I shall sell said building and leasehold; or (b) unless on or before fifteen (15) days before said option expires, I notify you in writing of my intention not to exercise said option, and I do agree, in that event, to reassign said option to you any time within the fifteen (15) days prior to the expiration of said option, upon your paying me the sum of five thousand ($5,000.00) dollars, the same being the amount heretofore paid for said option and to apply on the purchase price, in the event the option is exercised.

"In the event of neither A or B happening, I shall remain liable for said twenty-five thousand ($25,-000.00) dollars and the same shall be payable as follows:

"If the leasehold and building is sold by me on or before the date of the expiration of said option, said twenty-five thousand ($25,000.00) dollars shall be payable forthwith in cash, but if the building is not so sold, I agree to form a corporation before the expiration of said option, which corporation shall have a capital of one hundred and six thousand ($106,-000.00) dollars, representing the eighty-one thousand ($81,000.00) dollars I have paid for said leasehold and building subject to a mortgage on same, less the six thousand ($6,000.00) dollars to be used to retire the past due bonds on same, and plus the twenty-five thousand ($25,000.00) dollars I am indebted to you for on account of your services and as a further consideration for securing said option. Said one hundred and six thousand ($106,000.00) dollars shall be the total capital stock of said corporation and twenty-five thousand ($25,000.00) dollars of said stock, I agree to deliver to you in payment of the twenty-five thousand ($25,000.00) dollars hereinbefore set forth and due you.

"In witness whereof, I have hereunto set my signature this tenth day of March, in the year one thousand nine hundred and sixteen.

(Signed) "George H. Cummings."

As the time of the expiration of the option drew near, defendant talked matters over with plaintiff and

stated that an extension of time would be necessary, and four days before the expiration of the option he gave plaintiff his check for $5,000 with which to procure a renewal, and two days later was informed by plaintiff that no renewal could be obtained and the check was returned. Thereupon defendant himself secured an extension of the option by paying $5,000, but at the price of $345,000. Not being able to dispose of the property, defendant from time to time got other options, paying for options and taxes the sum of $28,442.85, and finally was unable to perform and lost all he had paid.

The last option was in April, 1918. The bill herein was filed June 13, 1916, and prayed, among other things, for an accounting relative to defendant's exercise of rights under the first and second options and for a personal decree. The circuit judge held that the agreement was so modified and abandoned by the parties that plaintiff could not recover under the agreement, and no damages being shown, none could be recovered. It appears that the building was not sold before the expiration of the option, so that part of the agreement, providing for the payment of $25,000 and 25 per cent. of the excess over and above $400,000, is out of the case.

Plaintiff at the hearing planted his right to recover a money decree upon the failure of defendant to notify him of an intention not to exercise the option. It is clear that defendant did not form the intention not to exercise the option and this was well known to plaintiff, and with such knowledge plaintiff tried to have the option extended but failed and defendant obtained a new option at an increased price. If defendant did not sell the building for a sum in excess of $400,000 before the time of the expiration of the option, or, if he intended to exercise the option, then he was to pay $25,000 in cash if he sold the leasehold and

building before the date of the expiration of the option, and if he did not so sell, he agreed to form a corporation before the expiration of the option and deliver $25,000 of the stock thereof to plaintiff. He did not sell, neither did he form a corporation, but secured other options at higher prices, paid money to obtain the same and finally lost all his option rights and the money he had paid. Plaintiff now asks that defendant be held to pay him $25,000 for failure to notify him that he did not intend to exercise the first option regardless of the fact that he did intend to exercise it if he could get an extension, and regardless of the subsequent acts performed by plaintiff showing a departure from strict performance of the agreement and a hope of being able to assist the defendant in saving the property and permit an exercise of the option regardless of the agreement. Plaintiff had a right to rest upon the agreement, or modify the same, or waive its terms.

The written agreement, after it was signed by the defendant, could be modified, and strict performance thereunder waived or abrogated by the parties, without violating the rule against the admission of evidence to alter, vary or contradict a written agreement. The rule relates to an attack upon the writing itself, and has no reference to the right of the parties to change the method or manner of performance, or waive rights or remedies thereunder by parol. *Grand Traverse Fruit, etc., Exchange* v. *Canning Co.,* 200 Mich. 95; 17 Cyc. p. 734; *Town* v. *Jepson,* 133 Mich. 673; *Wolff* v. *National Bank,* 131 Mich. 634; *Mouat* v. *Bamlet,* 123 Mich. 345. If the parties considered it to their advantage to depart from strict performance of the agreement, that would constitute a sufficient consideration.

A departure from stipulated performance can be predicated upon acts as well as upon an express agree-

ment to that effect.  When plaintiff took the $5,000, furnished him by defendant for the purpose of trying to procure an extension of the option, he knew that defendant had not notified him of an intention not to exercise the option and that it was defendant's intention to exercise the option, and therefore the liability of defendant did not, under the agreement, become fixed at $25,000 to be paid in money but only to be paid in cash if the leasehold was sold before the expiration of the option, and if not so sold then a corporation to be formed before the expiration of the option, and $25,000 of its stock delivered to plaintiff. Under this agreement, strictly construed, everything was to be done during the life of the option and plaintiff now insists upon such strict construction in the face of the fact that he endeavored to have the option time extended.  Plaintiff by his acts has waived strict performance.  But, if granted strict performance, what is the measure of his damages?  Not necessarily $25,000 because in the last analysis he was to have stock in a corporation to be formed and plaintiff himself testified that he did not believe the agreement represented cash. The corporation not having been formed before the expiration of the option mentioned in the agreement, if it be considered that this was a breach of the agreement, then we find plaintiff deprived of stock in a corporation not formed, and are we then to go back and assess the damages upon the undertaking to pay $25,000 and ignore the stipulations of the contract with reference to the method and manner of payment?  Leaving out of the case the questions of waiver and modification of the agreement, as claimed by the defendant, and considering only the terms of the agreement and what was actually done by defendant, we come to the fact that defendant did not organize a corporation as he had agreed and plaintiff, therefore, has not received stock therein.  What would

such stock have been worth? The evidence does not even touch upon that question. Not having shown any damages, under the agreement, the court was right in giving him none. We are also of the opinion that the court was right in holding that there was such modification of and waiver of the provisions of the agreement by defendant, evidenced by his acts and fully shown in the record, as to preclude him from asking that the part of the agreement he relies upon be taken as decisive of his right to recover.

In their brief, counsel for plaintiff ask that, if this court finds that damages have not been proven, due to the fact that payment was to be made in shares of a certain corporation to be formed by defendant, that the case be remanded for a rehearing in order to permit the introduction of such proof. The plaintiff having selected the equity side of the court, and bringing the case here on appeal to be heard *de novo* on the record made in the circuit, we must decide the case as presented and enter final decree.

The circuit judge reached the right conclusion and the decree entered is affirmed, with costs to defendant.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.