DON MITCHELL v. MELVIN RENDE AND OTHERS.
REUBEN KRAFT AND ANOTHER, APPELLANTS.[1]

December 5, 1947.

No. 34,457.

*Norvell C. Callaghan* and *W. A. Winter,* for appellants.

[1]Reported in 30 N. W. (2d) 27.

·*William Merrill,* for respondent Don Mitchell.

FRANK T. GALLAGHER, JUSTICE.

Defendants Reuben Kraft and Agnes Kraft, husband and wife, were the owners of a quarter-section farm in Pope county, Minnesota. Reuben acted as agent for his wife in leasing and managing the farm, and they will be referred to herein as landlord. On March 14, 1945, the landlord entered into a written lease of the land for the 1945 season with defendants Melvin Rende, Oscar Rende, and Adolph Rende, hereinafter called the tenants. The lease contained the following provision in the printed portion thereof: "each party is to pay one-half of the threshing-machine bill for threshing the grain." It also contained the following typewritten provision:

"It is agreed that all of the land that is or has been cultivated, shall be seeded to flax, and party of the first part shall furnish the seed, and first and second party to receive one-half of the proceeds of the crop and also one-half each of the Government Conservation payments, and each party pay one-half of the thrash bill."

The tenants took possession of the premises under the lease and seeded 155 acres to flax. It appears from the findings that the flax grown on the premises was short, thin, and weedy and could not be harvested and threshed in the usual way without serious loss of flaxseed, and that it was necessary to thresh the same with a combine, a portable combination harvester and threshing machine, after the flax had been cut and placed in windrows by means of a binder. It further appears from the findings that the tenants advised the landlord of the condition of the crop and suggested that the flax be combined before operations were commenced; that the landlord was present some of the time and saw the combining being done; and that he made no objections of any kind, either before or during the progress of the work. Apparently nothing was said as to who was to pay for the combining, the cost of which was much more than the ordinary threshing bill. Plaintiff, hereinafter referred to as the combiner, did the work of combining the flax. There is nothing

in the record to show that the landlord took any part in the hiring of the combiner or that he authorized the tenants to do so, although he was present part of the time when the work was being done and made no objections. The court found that plaintiff combined 155 acres of flax at the request of the tenants, that the reasonable value of his services was three dollars per acre, and that no part of this had been paid except $232.50 paid by the tenants. In its conclusions of law the court said:

"That the plaintiff is entitled to judgment against the defendants, and each of them, for the sum of two hundred thirty-two dollars and fifty cents, with interest thereon since the fourth day of October, 1945, at the rate of six per cent per annum, together with his costs and disbursements."

The landlord assigns as error that the conclusions of law are not justified or supported by the findings of fact, in that (1) the court erred in concluding that under a farm lease whereby a tenant and landlord each agree to pay one-half of the threshing machine bill a thresher (combiner) hired solely by the tenant has a cause of action as a third-party beneficiary to the farm lease directly against the landlord; and (2) that the court erred in concluding that the landlord became responsible for one-half of the combining bill as distinguished from one-half of a threshing bill by reason of the landlord's failure to object to the combining.

■ In its memorandum, which the court ordered to be considered part of the findings of fact, conclusions of law, and order for judgment, it said that the tenants became liable for all the combiner's claim when they employed him. It further said that the combiner did not release the tenants when he accepted one-half of his claim from them and at their suggestion attempted to collect the balance from the landlord. It stated that the landlord was liable directly to the combiner for one-half the latter's total claim by reason of the quoted provisions of the lease, citing as its authority La Mourea v. Rhude, 209 Minn. 53, 295 N. W. 304, and cases cited. In that case, the question was whether the plaintiff could recover on a contract to

which he was not a party. That contract was between the city of Duluth and defendants, in which the latter obligated themselves to do certain sewer construction work. Plaintiff sought to recover for consequential damage to his nearby real estate caused by the blasting operations of defendants. The contract provided for certain excavation work to be done for the city by the defendants. It appears that it could be done only by the use of heavy charges of explosives. Among other things, the contract made the defendants liable for any damages done to private property in connection with the work. Plaintiff brought the action against defendant copartnership (the contractor) for damage to his house caused by the blasting. Defendants claimed that this promise was to indemnify the city only and that the plaintiff had no cause of action against them. The court said that this argument was unsound. It upheld the trial court in overruling defendants' demurrer to the complaint and affirmed plaintiff's right to sue as a beneficiary of the contract. While the facts in that case are different from those in the case at bar, we hold that under the provisions of the lease between the landlord and the tenants here, requiring each party to pay one-half the threshing machine bill for threshing the grain, the combiner had a right to sue as a beneficiary of the contract to the extent of the threshing machine bill at least.

■ The next question is: Was there an oral or implied modification of the lease, as evidenced by the subsequent acts or conduct of the parties, which changed or enlarged the usual meaning of the words "threshing-machine bill" to mean the bill for combining?

The parties to the written lease involved herein were competent to modify or change it by new conditions not in writing so as to still make the agreement binding upon them.

"A written contract, not within the statute of frauds, may be modified by a subsequent oral agreement." 2 Dunnell, Dig. & Supp. § 1774, and cases cited under note 82.

In Youngberg v. Lamberton, 91 Minn. 100, 102, 97 N. W. 571, 572, this court said:

"* * * it was competent for the parties to the written agreement to change or modify the same, and by new conditions, not in writing, waive, dissolve, or annul the original contract, or to add to or qualify its terms, so as to be valid and binding upon the parties."

In Jacob v. Cummings, 213 Mich. 373, 378, 182 N. W. 115, 117, the court said:

"The written agreement, after it was signed by the defendant, could be modified, and strict performance thereunder waived or abrogated by the parties, without violating the rule against the admission of evidence to alter, vary or contradict a written agreement. The rule relates to an attack upon the writing itself, and has no reference to the right of the parties to change the method or manner of performance, or waive rights or remedies thereunder by parol. Grand Traverse Fruit, etc., Exchange v. Canning Co., 200 Mich. 95, 166 N. W. 878; 17 Cyc. p. 734; Town v. Jepson, 133 Mich. 673, 95 N. W. 742; Wolff v. National Bank, 131 Mich. 634, 92 N. W. 287; Mouat v. Bamlet, 123 Mich. 345, 82 N. W. 74."

With reference to the question of consideration of a modified contract, 2 Dunnell, Supp. § 1776, provides:

"A modification of a contract does not require a new consideration if it is made while the contract is still executory and there has been no breach. In such case the original consideration attaches to and supports the modified contract." See, also, cases under note 86a.

"* * * If the parties considered it to their advantage to depart from strict performance of the agreement, that would constitute a sufficient consideration." Jacob v. Cummings, 213 Mich. 378, 182 N. W. 117, *supra.*

The words in the lease "threshing-machine bill for threshing the grain" mean just what they say, namely, the bill for threshing grain with a threshing machine—a machine used for that purpose in farming communities for many years. Combining is a much more recent method of handling grain. It is, as its name implies, a com-

bination harvester and threshing machine. This court has described combining in McDowell v. Hanson, 204 Minn. 349, 351, 283 N. W. 537, 538, as follows:

"* * * By this method the grain is not bound and shocked before threshing, but is cut with a swathing machine, which leaves it in windrows upon the stubble. When dry enough to thresh the combine is put to use. The machine picks up the swathed grain from the windrows and threshes it. The obvious purpose, whichever method is used, is the threshing of the grain."

It is evident that when the lease was executed on March 14, 1945, both the landlord and the tenants understood that each was to pay one-half the "threshing-machine bill," meaning the bill for threshing the grain with a threshing machine. However, as the time approached for harvesting the flax, it appears that a new situation developed with reference to the condition of the crop and the method of harvesting and threshing it. According to the findings, the tenants advised the landlord of this condition before harvesting operations were commenced and suggested that the flax be combined. It further appears that the landlord made no objection to the use of the combine either before or during the progress of the work, and that he was present some of the time and saw the combining being done. The court concluded that the combiner was entitled to judgment for the unpaid half of the combining bill against both landlord and tenants. It is our opinion that, unless it can be construed that the subsequent acts or conduct of the parties so modified the original lease, expressly or impliedly, as to provide that each of the parties was to pay one-half the combining bill instead of one-half the threshing machine bill, the landlord cannot be held for more than one-half the threshing machine bill for the year in question. Was there such a modification?

"* * * The law is well settled that assent to an offer to modify, to rescind, or to alter a written contract may be evinced by the conduct and acts of the offeree as well as by express verbal agreement." Dwyer v. Illinois Oil Co. 190 Minn. 616, 619, 252 N. W. 837, 838.

Here, we have a situation where we can assume that both the landlord and tenants were familiar with farming operations and with the best method of harvesting and threshing a crop under conditions existing at the time the work was to be done. According to the findings, there would be a serious loss of flaxseed if the crop were handled in the usual way, and it was necessary to thresh it with a combine. The tenants advised the landlord of this condition before the harvesting operations were commenced and suggested that the flax be combined. The landlord made no objection, either before or during the progress of the work, even though he was present some of the time and observed the combining being done. The landlord and tenants each had an equal interest in the crop results. Market prices of flax at the time were sufficient to justify an extra effort to harvest the best crop possible. It seems to us that if the landlord believed at the time that it would be better to cut the crop with a binder and thresh it with a threshing machine it would have been a simple matter to say so when the tenants first suggested the use of a combine, or before or at the time the harvesting operations were commenced. Assuming that the landlord and tenants were practical farmers, they must have known that the cost of combining would exceed that of threshing with a machine in the usual manner. It should also have been a simple matter for the parties to obtain an estimated cost per acre for the combining before the work was commenced, and the landlord could have informed the tenants and the combiner, if necessary, that he expected to pay only one-half the regular threshing machine bill rather than one-half the combining. The fact that the landlord made no objection to the use of the combine and permitted the harvesting and threshing to be done in that manner, even though he was put on notice in advance, was, in our opinion, such an assent to the offer or suggestion of the tenants that the combine be used as to constitute a modification of the lease so as to hold the landlord liable for one-half the combining bill instead of one-half the threshing machine bill.

Under the facts and circumstances of the case, as presented to us in the record, we must agree with the trial court in that part of its memorandum when it said:

"In this case there are special circumstances which control. The condition of the crop was such that it would have been exceedingly difficult and wasteful, if not impossible, to harvest and thresh it in the usual way. It should be noted in passing that all other grain raised by the defendants Rende [tenants] in this neighborhood in 1945 was harvested with a binder and threshed with a threshing machine. The flax alone required special treatment. This situation was made known to the defendant Reuben Kraft [landlord] and the suggestion made to him that the flax be combined. With his full knowledge and acquiescence this method of threshing was adopted. He should not be heard to say that he did not concur in the selection of the type of threshing machine used."

We do not intend to establish any precedent in this case which will be used in support of a claim that all farm leases providing for the payment of one-half the threshing machine bill shall be considered modified to include one-half the combine bill merely by the tenant either suggesting that a combine be used or by his using one without the knowledge of the landlord. It is well known that the use of a combine assists the tenant in connection with some of the harvesting he would ordinarily be required to do if any ordinary threshing machine were used. Unless provided for in the written lease, or otherwise altered or modified as construed in the case at bar, the landlord in a lease providing for the payment of one-half the threshing machine bill should not ordinarily be held responsible for one-half the combine bill, especially if a combine is used as a substitute for a threshing machine without his knowledge or consent. Our decision in this case is limited to the facts before us.

Affirmed.