## JOHN C. BREZA v. ROBERT W. THALDORF AND ANOTHER.

149 N. W. (2d) 276.

March 10, 1967—No. 40,220.

*William A. Lindquist*, for appellants.
*C. Stanley McMahon*, for respondent.

PETERSON, JUSTICE.

Defendants appeal from the judgment for plaintiff in an action upon an express building contract for the unpaid balance of the price, and from an order denying their motion for judgment notwithstanding the verdict or for a new trial.

The essential background facts are not in serious dispute and can be stated briefly. During the month of September 1963, defendants, Robert W. Thaldorf and Lorene A. Thaldorf, husband and wife, talked to plaintiff, John C. Breza, a building contractor, about building a residential garage for them. Breza submitted an estimate of $1,380 for a garage with a wooden roof and $1,430 for one with a concrete roof. There was no formal construction contract or other specification of terms. Without at that time stating the kind of roof to be installed, defendants told plaintiff to go ahead with the construction. Shortly after construction commenced, defendants told plaintiff they would be satisfied with a wooden roof for $1,350, if he would guarantee that people could walk on it, which he did. Plaintiff proceeded to construct the garage with a wooden roof and had the garage completed by early November except for the application of the roofing material. Because the weather was getting a little cool to apply roofing, plaintiff asked defendants if it would be all right to put on a temporary roof, to which they consented. The "temporary" roof differed from a "permanent" roof only with respect to the weight of the roofing paper and the somewhat longer guarantee of usefulness with the latter. Plaintiff put on a temporary roof and shortly thereafter presented defendants with a bill for $1,350, less $70 because a permanent roof was not installed, making a net price of $1,280. Defendants agreed to pay that amount but have paid only $100. The jury returned a verdict for plaintiff of $1,000 less the $100 already paid.

■ The crucial fact issue in dispute relates to the understanding reached by the parties contemporaneous with the decision to install the temporary roof and the submission of plaintiff's bill to defendants. Plaintiff's version of the conversation was to the effect that he would deduct $70 from the original price if defendant Robert Thaldorf would himself put on a permanent roof the following spring and that Thaldorf had said that he would pay plaintiff the $70 *if* plaintiff thereafter undertook to install the roof. Defendant Robert Thaldorf's version was that plaintiff had said that he would finish the job in the spring, the $70 to be in effect withheld until he completed the job. The bill submitted by plaintiff to defendants included the ambiguous notation: "$70 less until roof is complete." The conversations and the notation on the bill were, of

course, as imprecise as the original contract itself. The subsequent conduct of the parties, however, casts additional light upon their understanding. Defendants paid plaintiff $100 upon presentment of plaintiff's bill and explained that they were not able to pay more at that time because they were short of money. At this time defendants did not say that the work was in any way unsatisfactory or that the balance would not be paid until a permanent roof was installed. Defendant Robert Thaldorf's testimony, moreover, was not corroborated by his wife.[1] Plaintiff's wife, who kept his books and prepared the statements, testified without objection that it was her understanding that the work had been completed. The credibility of the witnesses and the inferences to be drawn from the evidence were for the jury to determine, and on appeal we consider the evidence in the light most favorable to the prevailing party.

Defendants argue that plaintiff pleaded and proved an express contract to build a garage with a permanent roof, not a modified contract to build a garage with only a temporary roof, and that accordingly there was no consideration for defendants' subsequent promise to make what amounted to a partial payment prior to full performance of the contract. This argument falls upon the fact that the jury found, as it could under the amended pleadings and the evidence, that the parties had during the progress of construction verbally agreed to modify the terms of the original contract. Defendants frankly concede that, once the finding of a modified contract is sustained, no issue of consideration is presented, for the original consideration would attach to and support a modification made while the original contract was still executory.[2]

Defendants next argue that, an express contract having been established, it was error to admit evidence of plaintiff's construction costs[3]

---

[1] The trial court in a memorandum made part of its order denying defendants' motion for a judgment n. o. v. or for a new trial said: "I believe the jury was somewhat impressed by the fact the defendant, Lorene Thaldorf, did not corroborate many of the facts indicated by the defendant, Robert Thaldorf, [which] were within her knowledge and which were favorable to the defendants."

[2] Mitchell v. Rende, 225 Minn. 145, 30 N. W. (2d) 27.

[3] Plaintiff was permitted over objection to testify as to the costs of construction materials. Plaintiff also testified as to the number of hours he and

and that the court erred in instructing the jury concerning the right to recovery upon substantial performance. Defendants, by their answer and evidence adduced at trial, claimed that the garage was not built in a workmanlike manner and asked recoupment for the expense of remedying the defects. The issue of substantial performance was properly submitted to the jury in that context, for it related to defendants' claim of defective, rather than uncompleted, construction.[4]

It was error, on the other hand, to admit evidence of Breza's construction costs. The construction contract—modified or not—was clearly an express contract, and such costs could relate only to a recovery in quantum meruit. It is fundamental that proof of an express contract precludes recovery in quantum meruit.[5] The error, however, was harmless. The jury granted plaintiff an amount which was less than even his costs, exclusive of labor. That the recovery was less than the contract price may be attributed to the defects in construction for which defendants had demanded recoupment. Although defendants might instead have complained that the jury made an inadequate reduction on account of the defects in construction, the jury was not bound to allow as much for remedying the defects as defendants' expert testified it would cost, and there was evidence sufficient to sustain a finding that some of the defects were due to defendants' own actions as much as to the manner of plaintiff's performance.

■ The most substantial error assigned by defendants relates to the misconduct of plaintiff's counsel in disclosing a prior settlement offer by defendants. Defendants had introduced in evidence, over plaintiff's objections, a letter from plaintiff's attorney demanding $1,280 for the "garage which Mr. Breza built on your property." The purpose of the

---

his employees worked on the job, but the court sustained an objection to testimony concerning the reasonable value thereof, on the grounds that the evidence was not within the issues of the case once an express contract was proved.

[4] H. P. Droher & Sons v. Toushin, 250 Minn. 490, 85 N. W. (2d) 273; Independent School Dist. No. 35 v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511.

[5] Ylijarvi v. Brockphaler, 213 Minn. 385, 7 N. W. (2d) 314; Schimmelpfennig v. Gaedke, 223 Minn. 542, 27 N. W. (2d) 416.

exhibit at that point in the trial apparently was to show that plaintiff had assumed inconsistent positions prior to the trial. Because plaintiff's counsel considered the introduction of the exhibit improper, as constituting part of settlement negotiations, he thereafter asked defendant Robert Thaldorf the following question:

"As a matter of fact, Mr. Brehmer and Mr. Lindquist[6] were trying to work this thing out during 1964; at one time you made an offer to settle it for $700?"

There is little question that this act of counsel was improper and ordinarily would, without more, require a mistrial.[7] The trial court sustained an objection to the question and initially granted a motion for a mistrial, but the court reversed its ruling after the following discussion occurred in chambers:

"The Court: I think we will continue on. I told the jury to disregard the remark.

\* \* \* \* \*

"Mr. Lindquist: I have got a letter here to Mr. Brehmer that went with this—let's read that, maybe I can have that along with the offer. *I don't particularly want a mistrial,* but I don't want to give advantages away, either. \* \* \*

\* \* \* \* \*

"Mr. Lindquist: I don't know what to do. I think we have a strong case but I just don't like that prejudicial—*I talked to my client and he didn't seem to think there was anything wrong with telling about it.*

"The Court: I will deny the motion for a mistrial.

"Mr. Lindquist: You will admonish the jury that any talk of settlement should not be—I think the jury should also know the date of the offer.

"The Court: I think the less said about it the better." (Italics supplied.)

No further cautionary instruction was requested by defendants.

---

[6] Brehmer and Lindquist were, respectively, attorneys for plaintiff and defendants.

[7] Esser v. Brophey, 212 Minn. 194, 3 N. W. (2d) 3.

We agree with the trial court that on the record as a whole the incident did not affect the result [8] and that the defendants themselves confirmed that it was not inherently prejudicial. The defendants, by electing to proceed with the trial to completion, effectively waived objection to the misconduct.[9]

Affirmed.

---

[8] The trial court's memorandum reads in part: "It is the general principle that new trials are to be granted only for errors materially affecting the substantial rights of the grieved party. In the case at hand the court feels that the substantial rights of the defendants were not materially affected by any of the rulings or the instructions of the court. New trials should not be granted unless there is a reasonable prospect that another trial might result differently, and when the motion is made on some grounds there must be a strong probability of a different result. * * *

\* \* \* \* \*

"The defendants in this case apparently feel they should have this partially-built garage for nothing because of defects in its construction and the failure of the plaintiff to perform according to their interpretation of the contract.

"The court feels that it is doubtful that any jury hearing the evidence in this case would come to a considerably different result than was arrived at by the last jury."

[9] State v. Thompson, 273 Minn. 1, 33, 139 N. W. (2d) 490, 513.