RELIABLE METAL, INC., Appellant,

v.

SHAKOPEE VALLEY PRINTING, INC., Respondent.

No. C9–86–2150.

Court of Appeals of Minnesota.

June 16, 1987.

David G. Johnson, Prior Lake, for appellant.

Phillip R. Krass, Krass & Monroe Chartered, Shakopee, for respondent.

Considered and decided by POPOVICH, C.J., and WOZNIAK and LESLIE, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a trial court judgment denying appellant damages for breach of contract. Appellant claims the trial court improperly concluded respondent fulfilled its contractual obligations because (1) the court failed to apply the unambiguous wording of the contract, (2) the contract was not modified, (3) a substantial term of the contract was open and vague, and (4) respondent failed to supply promised consideration. We reverse.

## FACTS

On July 11, 1983, respondent Shakopee Valley Printing, Inc. signed a contract with appellant builder Reliable Metal, Inc. regarding construction of an addition to respondent's building. Appellant drafted the contract and set the price at $65,560. Other construction companies had made lower bids, but were unwilling to accept a trade agreement as part of the contract. Respondent considered that condition essential.

The contract states:

We [appellant] will consider a trade credit of $20,000 on this contract, credit end of contract.

On July 20, 1983, representatives of appellant, respondent and a third party, TV Dispatch, Inc. (TV Dispatch), met to discuss a three-way trade. TV Dispatch agreed to accept a $20,000 credit from respondent, and offered appellant a written agreement to consent to a trade between

appellant and TV Dispatch, instead of respondent. On that instrument appellant's president, Harold Swenson, wrote "No way will. I sign this." Swenson testified he never orally agreed to a trade agreement with TV Dispatch.

Swenson had numerous contacts with representatives of TV Dispatch during the next 11 months, but appellant only accepted steel purlins valued at $600. In a May 14, 1984 letter to TV Dispatch, appellant offered to accept a cash payment of $12,400 and forgive $7000 of the trade balance owing. TV Dispatch did not respond. Appellant then wrote respondent on May 22 and stated its inability to agree to a trade with TV Dispatch:

> Our contract with you clearly indicates that the trade is between Shakopee Valley Publishing, and our Reliable Metal Buildings, Inc. No mention in the contract, or any verbal indication that the trade would be with others, before any such arrangements were made I would think, it should have been approved between all parties.

> It was my understanding that this trade would be directly with Shakopee Valley Publishing for property-equipment-or services (such as script which could have been sold for printing service). At the time of contract signing, I conversed with my advertising agency, and they seemed to think we could sell the printing either to them or some of their associates.

Appellant offered respondent the same cash payment arrangement it had offered TV Dispatch. On May 24, appellant sent respondent an invoice for $19,400. Previous invoices stated receipt of $20,000 in trade by appellant and did not reflect that amount as being owed by respondent.

On May 29, TV Dispatch wrote appellant and chronicled proposed trade offers made to appellant:

> We will continue to attempt to complete the trade-out Agreement with you, and hope we can finalize in the near future. We are not interested in a cash settle-ment, but in a trade-out, as agreed upon originally.

Appellant responded in a June 1 letter and discredited TV Dispatch's efforts:

> In my opinion, I feel I am being used to collect a long over due receivable for Shakopee Valley Publishing, they have a long over due receivable on the books, and to remove this receivable, they just trade, by giving the creditor TV Dispatch credit for the $20,000.00, and leave me being the collector of bad debts, by transfering this debt to me in form of trade.

> This trade between Shakopee Valley Publishing and TV Dispatch, was done without my knowledge and without my approval, therefore I should not be bound by such an unapproved transaction.

> Our contract between Shakopee Valley Publishing and Reliable Metal Bldgs. simply states "We will consider a trade credit of $20,000.00 on this contract." In my opinion I have given it ample consideration, 11 months should have been ample time to work out a trade, at this time I am no longer considering a trade, and I will look to Shakopee Valley Publishing for a cash settlement.

Appellant sued respondent for breach of contract. The trial court concluded respondent had fulfilled its contractual obligations. The court found the contract language regarding the trade is ambiguous, appellant's actions are the best evidence of its intent to perform the contract, and from late summer 1983 through May 1984 the three corporations proceeded with the understanding TV Dispatch was to provide appellant with $20,000 worth of trade materials. Appeal is from the October 3, 1986 judgment.

## ISSUE

Did the trial court err in concluding respondent fulfilled its contractual obligations?

## ANALYSIS

 1. Appellant claims the trial court's finding that the contract language, "We will consider a trade credit of $20,000 on this contract," is ambiguous was made

erroneously. No deference need be given the trial court's determination regarding ambiguity. *Blackburn, Nickels & Smith, Inc. v. Erickson,* 366 N.W.2d 640, 643 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. June 24, 1985).

"Whether a contract is ambiguous is a legal determination in the first instance." *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn.1982); *Fena v. Wickstrom,* 348 N.W.2d 389, 390 (Minn.Ct.App.1984). "A writing is ambiguous if, judged by its language alone and without resort to parol evidence, it is reasonably susceptible of more than one meaning." *Metro Office Parks Co. v. Control Data Corp.,* 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973).

*Briggs Transportation Co. v. Second Norwestern National Bank,* 406 N.W.2d 7 (Minn.Ct.App.1987). Extrinsic evidence of intent may be examined only if the contract is first determined to be ambiguous on its face. *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn.1982).

■ Appellant asserts the plain meaning of the contract language unambiguously indicates appellant would only consider a trade and does not bind it to acceptance of a trade. We agree. The verb "consider" is defined to mean:

> To fix the mind on, with a view to careful examination; to examine; to inspect. To deliberate about and ponder over. To entertain or give heed to.

Black's Law Dictionary 277 (5th ed. 1979). *See generally Metro Office Parks Co. v. Control Data Corporation,* 295 Minn. 348, 352, 205 N.W.2d 121, 124 (1973) (words must be read in the context of the entire agreement).

■ Contractual language is to be given its plain and ordinary meaning. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 67 (Minn.1979). Where explicit language indicates a purpose different from that thought to be the main purpose of the agreement, the language must be given its obvious meaning and cannot be overruled. *Marso v. Mankato Clinic, Ltd.,* 278 Minn. 104, 115, 153 N.W.2d 281, 289 (1967). Here the agreement's clear wording did not bind appellant to a trade.

■ 2. While no written modification was made, a written contract outside the statute of frauds may be modified by a subsequent oral agreement. *Mitchell v. Rende,* 225 Minn. 145, 148, 30 N.W.2d 27, 30 (1947). In the absence of an express verbal agreement, subsequent acts and conduct of the parties may establish implied modification of the contract. *Id.* at 150, 30 N.W.2d at 30–31; *Yaritz v. Dahl,* 367 N.W.2d 616, 618 (Minn.Ct.App.1985). A parol modification of a written contract must be shown by clear and convincing evidence. *Merickel v. Erickson Stores Corporation,* 255 Minn. 12, 15, 95 N.W.2d 303, 305 (1959).

Respondent argues appellant's acceptance of the trade agreement with TV Dispatch is demonstrated by the extensive negotiations between appellant and TV Dispatch. It also highlights the invoices sent to respondent by appellant indicating receipt of a $20,000 trade.

■ While appellant may have used inappropriate terms in its invoices, respondent failed to establish by clear and convincing evidence that appellant consented to a trade agreement involving TV Dispatch. Appellant's good faith attempt to resolve its compensation did not constitute a modification of the original agreement to consider a trade with appellant. Its refusal to accept the trade items offered by TV Dispatch was not arbitrary. Appellant considered a trade. Unable to agree, respondent remains liable on the contract for the remaining $19,400.

3. Because the unambiguous contract was not modified to release respondent from its direct obligation, we need not reach appellant's other arguments regarding respondent's liability.

## DECISION

The trial court improperly concluded respondent fulfilled its contractual obligations.

Reversed.