VIRGIL A. KLUESNER AND MARY J. KLUESNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CPT CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kluesner v. Commissioner
Docket Nos. 5383-87; 6237-87.
United States Tax Court
T.C. Memo 1989-83; 1989 Tax Ct. Memo LEXIS 87; 56 T.C.M. (CCH) 1354; T.C.M. (RIA) 89083; February 27, 1989. Michael J. Mollerus and Allan R. Poncin, for the petitioners in docket No. 5383-87. John S. Jagiela and Mark A. Kimball, for the petitioner in docket No. 6237-87. Charles M. Berlau, for the respondent. WILLIAMS
MEMORANDUM OPINION WILLIAMS, Judge: This case is before us on petitioner CPT Corporation's motion for summary judgment and petitioners Virgil A. Kluesner's and Mary J. Kluesner's cross-motion for summary judgment filed pursuant to Rule 121, Tax Court Rules of Practice and Procedure. The Commissioner is a stakeholder in this controversy; he determined deficiencies in petitioners Kluesners' Federal income tax for their 1980 taxable year in the amount of $ 59,392 and for their 1983 taxable year in the amount of $ 2,305. Respondent also determined deficiencies in petitioner CPT Corporation's Federal income tax for its taxable year ending June 30, 1980, in the amount of $ 75,969 and for its taxable year ending June 30, 1981, in the amount of $ 5,533. The issues we have been asked to decide are, (1) whether CPT Corporation gave its employee, Virgil A. Kluesner, new stock options in the course of terminating his employment, *90 (2) if CPT Corporation gave new options, whether they were given in connection with the performance of services within the meaning of section 83, [1] and (3) if so, whether the options had a readily ascertainable fair market value at grant. Because of our holding on the first issue, we do not reach the other issues. There is no dispute as to any material fact, and judgment can be rendered as a matter of law. Petitioners Virgil A. Kluesner ("Kluesner") and Mary J. Kluesner resided in Edina, Minnesota at the time they filed their petition in this case. Petitioner CPT Corporation's ("CPT") principal place of business at the time its petition was filed was Minneapolis, Minnesota. From a time prior to 1978 until April 7, 1980, CPT employed Kluesner in the capacity of Vice President, Marketing. In consideration for services provided, CPT granted Kluesner nonqualified stock options [2] to purchase shares of the common stock of CPT as follows (after accounting for a 3 for 2 stock split): Date of
Number of
Exercise
Grant
Shares
Price
11/12/78
7,500
$  9.50
4/13/79
22,500
11.67
*91 The options granted in 1978 ("1978 option") were subject to the following terms of agreement [3] between Kluesner and CPT: NON-QUALIFIED STOCK OPTION AGREEMENT *92 THIS AGREEMENT, made between CPT CORPORATION, a Minnesota Corporation ("Company") and V. A. Kluesner ("Optionee") NOW, THEREFORE, the parties hereto agree as follows: 1. Company hereby grants to Optionee, as of the date of this agreement to induce Optionee to further his efforts on its behalf and not in lieu of salary or other compensation for services, the right and option (hereinafter called the "Option") to purchase all or any part of an aggregate of Common Shares of Company each having a par value of Five Cents ($ .05) per share at the Option price of $ 14.25 per share on the terms and conditions herein set forth. 2. No part of this Option may be exercised by Optionee until November 12, 1979, and the entire Option shall in all events terminate five (5) years from the date of grant, and, further, may be exercised during the Option only as follows: November 12, 1979 - November 12, 1980 1,250 1/4 of such shares November 12, 1980 - November 12, 1981 1,250 1/4 of such shares November 12, 1981 - November 12, 1982 1,250 1/4 of such shares November 12, 1982 - November 12, 1983 1,250 1/4 of such shares In the event that Optionee does not purchase in any one period *93 the full number of shares to which he is entitled under the Option he may purchase such shares at any subsequent time during the five-year term of this Option. 3. This Option shall terminate and may no longer be exercised if the Optionee ceases to be a director (or employee if applicable) of Company or its subsidiaries, except that: (i) If Optionee's employment shall be terminated involuntarily for any reason other than his death, he may, at any time within a period of one month after such termination, exercise this Option to the extent that the Option was exercisable by him on the date of the termination of his employment; and * * * 7. This Option may not be transferred, except by will or the laws of descent and distribution to the extent provided in subsection (b) of Section 3, and during the Optionee's lifetime this Option is exercisable only by him. The options granted were adjusted for a three-for-two stock split of CPT common stock which occurred after the grant of the options. The options to purchase CPT common stock were not traded on an established market. The stock subject to Kluesner's options to purchase was not registered under the Securities Act of 1933. *94 On April 7, 1980, CPT asked Kluesner to resign his position with CPT. Kluesner submitted his resignation in writing to CPT effective April 7, 1980. As part of the termination of Kluesner's employment, CPT agreed to pay Kluesner up to six months of severance pay and to extend the period during which Kluesner could exercise his nonqualified stock options through October 7, 1980. More specifically, the termination letter provided for: "Continuation of stock options, under existing terms, through October 7, 1980." After April 7, 1980, Kluesner had no other contractual obligations with CPT and performed no services of any kind or nature for CPT. On April 7, 1980, Kluesner had a vested right to purchase one-fourth of the 7,500 shares granted in the 1978 option. At that time, Kluesner had not exercised his right to purchase the 1,875 shares of CPT stock pursuant to the 1978 option. Also on April 7, 1980, Kluesner did not have any right to exercise the first quarter share of options on 22,500 shares granted pursuant to the April 13, 1979, option agreement ("1979 option"). Under the terms of the 1979 option, Kluesner had a vested right to purchase one-fourth, 5,625 shares, on April 13, 1980, six *95 days after CPT terminated Kluesner's employment. Kluesner exercised his nonqualified stock options pursuant to the termination letter in full on October 3, 1980. Kluesner tendered a certified check to CPT in the amount of $ 83,456.25, the full payment amount required to exercise his options to purchase the 7,500 shares of CPT common stock. The fair market value of CPT common stock on October 3, 1980, was $ 32.06 per share. The fair market value of the 7,500 shares, therefore, was $ 240,450 ($ 32.06 x 7,500). CPT did not deduct or withhold any money when Kluesner exercised his options because Kluesner was no longer employed by CPT. On February 9, 1981, Kluesner received an informational Form 1099 from CPT which included $ 37,012.50 as "fees, commissions, and other income" for 1980. On November 7, 1984, CPT sent Kluesner a second informational Form 1099 to substitute for the prior Form 1099 and reported $ 156,993.75 as Kluesner's income from the exercise of the nonqualified stock options for 1980. The issue we must decide is whether CPT gave Kluesner new options at the time his employment was terminated. CPT granted stock options to Kluesner in 1978 and 1979 while Kluesner was *96 CPT's employee. CPT terminated Kluesner's employment in 1980 when one-fourth of the 1978 option and no part of the 1979 option was exercisable. Under the terms of the option agreements, Kluesner had one month subsequent to termination of employment to exercise any vested right to purchase stock at the option price. As part of the termination conditions, however, CPT, (1) permitted the vesting of Kluesner's option to purchase one-fourth of the shares offered under the 1979 option, and (2) agreed that Kluesner could exercise the vested options at any time within six months of his termination. Kluesner exercised the options in their entirety within the six-month period. In effect, CPT treated Kluesner as an employee for purposes of the option agreements while he received severance pay. Kluesner contends that the vesting and extension of time for exercising some of the options constituted the granting of new options. Because Kluesner further believes that the new options were not granted in connection with services and had a readily ascertainable fair market value at grant on April 7, 1980, he concludes that he was taxable on receipt of the options on April 7, 1980, the date of grant *97 rather than on October 3, 1980, the date of exercise. CPT and respondent argue that accelerating and extending the exercise time of the options modified the old options and did not amount to the grant of new options. CPT alternatively argues that CPT waived conditions precedent to the option contracts. In general, section 83 provides rules for taxing the value of property transferred in connection with the performance of services. Generally, the excess of the fair market value of the property over the amount paid for the property is includable in the gross income of the taxpayer who performed the services at the earlier of when rights in the property are transferable or are not subject to a substantial risk of forfeiture. Sec. 83(a). Section 83(h) allows a deduction under section 162 to the person for whom the services were performed equal to the amount included in the gross income of the service provider. The deduction is allowed in the year the service provider includes the amount in gross income. Sec. 83(h). The regulations clarify that the allowed deduction is equal to the amount includable as compensation in the gross income of the service provider. Sec. 1.83-6(a), *98 Income Tax Regs.
Kluesner did not include the value of the stock options in gross income when he received them in 1978 and 1979 and does not now claim he should have done so. Kluesner concedes that the 1978 and 1979 stock options were given "in connection with the performance of services." Kluesner also does not argue that the options had a readily ascertainable fair market value when CPT granted the options. Section 83 does not apply to the transfer of an option without a readily ascertainable fair market value. Sec. 83(e)(3); sec. 1.83-7, Income Tax Regs. We conclude, therefore, that Kluesner has conceded that section 83 did not apply at the time of grant in 1978 and 1979. See sec. 83(e)(3). Federal tax law determines what interests created by state law are taxed. Morgan v. Commissioner,309 U.S. 78 (1940). Nevertheless, the law of the state in which a corporation issuing a stock option is incorporated controls the legal interests of the parties in the stock options. Rogers v. Guaranty Trust Co.,288 U.S. 123, 130 (1933). The law of the state of Minnesota controls both the determination of the parties' interests in the option agreements in *99 this case and the characterization of the option agreements. A stock option is a contract. Duffy v. Park Terrace Supper Club, Inc.,295 Minn. 493, 206 N.W.2d 24, 27 (1973). The parties to a contract may modify an existing contract by mutual consent. Mitchell v. Rende,225 Minn. 145, 30 N.W.2d 27 (1947). A recision of one provision of a contract by mutual agreement is a modification that does not cancel any other contractual obligation. Merickel v. Erickson Stores Corp.,255 Minn. 12, 95 N.W.2d 303, 306 (1959). The parties may modify their agreement by extending the time for performance of a contract. In re Estate of Giguere,366 N.W.2d 345, 347 (Minn. Ct. App. 1985) (citing Thoe v. Rasmussen,322 N.W.2d 775, 777 (Minn. 1982)). Under Minnesota case law, a modification does not require new consideration if the contract is executory and the parties are not in breach. Mitchell v. Rende, supra at 30; Asbestos Products, Inc. v. Healy Mechanical Contractors, Inc.,306 Minn. 74, 235 N.W.2d 807, 809 (1975). The original consideration supports the modified contract. Mitchell *100 v. Rende, supra at 30; Breza v. Thaldorf,276 Minn. 180, 149 N.W.2d 276, 279 (1967). Kluesner and CPT in the present case agreed to a "continuation of stock options, under existing terms, through October 7, 1980." CPT permitted Kluesner's vesting in options that would have vested six days after his employment was terminated and extended the time in which Kluesner could exercise his options by five months. No other terms were changed. The price and number of shares remained unchanged. In addition, the options remained nontransferable and exercisable only by Kluesner. We believe that under Minnesota law Kluesner and CPT, in modifying the existing option agreements, did not enter into new contracts. Because the parties did not create new stock options, section 83 did not apply at the time the option agreements were modified. Kluesner relies on Johnson v. Northern Oil Co.,212 Minn. 249, 4 N.W.2d 82 (1942), to support his position that the April 7, 1980, agreement was a new contract. Kluesner quotes the following language from Johnson:
There must be valuable consideration in order to make a bilateral, executory agreement an enforceable *101 contract. If the agreement be for the modification of such a contract, there results ordinarily a new one consisting of the old so far as it remains unchanged and the new terms and conditions introduced by the modification. [212 Minn. 249, 4 N.W.2d 82.]
The remainder of the quoted paragraph states as follows: The contract-making process has been repeated, and its essentials must be present. It follows that the new agreement is not a contract if it lacks consideration. [Citations omitted.] Johnson v. Northern Oil Co., supra at 82. In the one-page Johnson opinion, the court holds that a modification agreement requires consideration. See Minn. Stat. Ann. sec. 336.2-209(1), comment (1966). Notwithstanding that the Johnson court may have held that a modified contract is a new contract as Kluesner suggests, we are satisfied that in more recent cases the Minnesota Supreme Court has concluded that an existing contract may be modified without creating a new contract, and new consideration is not required. See Mitchell v. Rende, supra;Merickel v. Erickson Stores Corp., supra;Asbestos Products, Inc. v. Healy Mechanical Contractors, Inc., supra; *102 Breza v. Thaldorf, supra.In this case, the original 1978 and 1979 options were modified, (1) by extending the time for petitioner to exercise his vested options to coincide with the date of termination of his severance pay, and (2) by permitting those options which would vest on the sixth day after termination of his employment to vest. This extended six-month period coincided with the period in which he received severance pay and gave him no rights other than what he would have been able to exercise under the option agreements had he remained an employee until termination of his severance. No new duties were imposed on Kluesner. Rather, these modifications eliminated any dispute over Kluesner's rights to options prior to his complete severance from CPT. He was permitted the vesting and exercise of options that would have vested and could have been exercised had he remained an employee during the period preceding his complete severance. As viewed by Minnesota law, the modifications did not create new contracts. As such the options were not granted to Kluesner in 1980 but in 1978 and 1979. Nonqualified stock options such as those held by Kluesner which were not *103 taxed at grant because the option did not have a readily ascertainable fair market value are taxed at exercise or other disposition of the option, regardless of whether the option subsequently acquired a readily ascertainable value prior to exercise. Sec. 1.83-7, Income Tax Regs. Consequently, section 83 will apply on Kluesner's exercise of the options on October 3, 1980, even if the options had acquired readily ascertainable fair market values prior to exercise. Sec. 1.83-7(a), Income Tax Regs. We need not consider, therefore, whether the options had a readily ascertainable value after November 12, 1978 and April 13, 1979, their dates of issuance. [4]
Pursuant to section 83 and the regulations thereunder, Kluesner is taxed on his exercise of the options. Sec. 1.83-7(a), Income Tax Regs. Kluesner must include *104 the excess of the fair market value of the options on October 3, 1980, over the amount he paid for the options in his gross income. The parties agree that the fair market value of the options on October 3, 1980, was $ 32.06 per share or $ 240,450 for the total options exercised. Kluesner paid $ 83,456.25 for the options. Kluesner, therefore, must include $ 156,993.75 in income in 1980, and CPT is entitled to a corresponding deduction. Kluesner further argues that we should apply the principles of section 425(h), relating to "statutory" stock options. Section 425(h) provides that for purposes of statutory stock options, if the terms of an option are modified or extended, such modification or extension is treated as the granting of a new stock option. [5] Kluesner contends that pursuant to section 425(h) the five-month extension in this case should be treated as the grant of a new option. Section 425(h), by its terms, applies only to options subject to sections 421 through 425, contained in part II of Subchapter D of Subtitle A of the Internal *105 Revenue Code. Sections 421 through 425 provide favorable rules for certain stock options to encourage employees to expand and improve the profit positions of their companies. H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 125, 188. The stock options must meet a number of requirements to qualify for the favorable treatment. Section 425(h) is designed to ensure that statutory stock options will not be modified inconsistently with the requirements for such options. If an employer extends the exercise period of a statutory option, section 425(h) requires that the option meet all of the statutory requirements at that time. The section 425(h) modification rule simply does not apply to a nonqualified option. Instead, as discussed above, state contract law determines the effect of an extension of the time for performance of a nonqualified option contract. To reflect the foregoing and concessions, Petitioner CPT Corporation's Motion for Summary Judgment in docket Nos. 5383-87 and 6237-87 will be granted.
Petitioners Virgil A. Kluesner's and Mary J. Kluesner's Cross-Motion for Summary Judgment in docket No. 5383-87 will be denied.
Decisions *106 will be entered pursuant to Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years at issue, unless otherwise indicated.↩
2. The options were not "statutory" stock options subject to the rules of sections 421 et seq., of the Internal Revenue Code of 1954↩ as amended and are therefore referred to as "nonqualified stock options."
3. The 1979 option provides the same terms as the 1978 option except for the option price in paragraph 1 which is $ 17.50 per share and paragraph 2 which states as follows: 2. No part of this Option may be exercised by Optionee until April 13, 1980, and the entire Option shall in all events terminate five (5) years from the date of grant, and, further, may be exercised during the Option only as follows: April 13, 1980 - April 13, 1981 3,750 1/4 of such shares April 14, 1981 - April 13, 1982 3,750 1/4 of such shares April 14, 1982 - April 13, 1983 3,750 1/4 of such shares April 14, 1983 - April 13, 1984 3,750 1/4 of such shares In the event that Optionee does not purchase in any one period the full number of shares to which he is entitled under the Option he may purchase such shares at any subsequent time during the five-year term of this Option.↩
4. We, therefore, do not consider Kluesner's challenge to the validity of the section 83 regulations. Kluesner argued that the regulations were invalid because they prevented him from valuing the options on April 7, 1980. We have held, however, that section 83 applies on October 3, 1980. The regulations do allow Kluesner to value the stock he received on October 3, 1980.↩
5. Section 425(h) would not, however, treat the acceleration of the stock options as the grant of a new option. Sec. 425(h)(3)(C).↩